FINCH *vs.* BROWN & BARTHOLOMEW.

The *rule of damages* in a proceeding under the statute against ships and vessels, for injuries done to other vessels through negligence or wilful misconduct, is the *actual damage to the vessel injured*, and not *contingent damages* sustained by the owner—such as the loss of earnings, &c.

And where, in such a case, three witnesses for the plaintiff concurred in estimating the damage at $1000, and one at $1500; and two witnesses for the defendant set the damage at only $300, and one valued the *whole vessel* at less than $1000, and the jury found for $1548, the verdict was set aside as *excessive* and a new trial granted.

Whether the *omission* to have a *light* in the rigging of a vessel, lying at anchor in the night time on the *Hudson*, will deprive the owner of the right to recover damages, in case his vessel is run afoul of, through the negligence or wilful misconduct of persons navigating other vessels, *quere.*

THIS action was tried at the Rensselaer circuit in October, 1833, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The suit was brought on a *bond* given to relieve the steamboat Ohio from an attachment issued under the *statute authorizing proceedings against ships and vessels* in certain cases. *Statutes of* 1831, *p.* 421, and 2 *R. S.* 491, &c. The plaintiff proved that a sloop belonging to him, while lying at anchor in the Hudson river in a dark rainy night, was run afoul of by the steam-boat Ohio, and sunk. The evidence was very contradictory as to whether *lights* were exhibited on board the plaintiff's vessel, as required by statute, at the time of the collision, and also as to the extent and amount of injury done the vessel. Three witnesses on the part of the plaintiff estimated the damages at $1000, and one at $1500; while two witnesses on the part of the defendants put the damage at a sum not exceeding $300, and one of them valued the *whole vessel* at less than $1000. The judge charged the jury, that if they were satisfied that there were *lights* on board the plaintiff's vessel at the time of the collision, and that the Ohio had been negligently navigated, or that the accident might have been avoided by due care and caution in navigating her, the plaintiff was entitled to recover the damages or actual loss

sustained by him. He observed to the jury, that the evidence on the part of the defendants, to establish the fact that there were no lights on board the plaintiff's vessel, was in its nature rather of a *negative* character, as there might have been lights, though not seen by the defendant's witnesses ; whilst the proof on the part of the plaintiff was *positive*, as established by several witnesses, that there were lights. The jury found a verdict for the plaintiff for *fifteen hundred and forty-eight dollars.* The defendants ask for a new trial.

*S. Stevens,* for the defendants. Where the claim of a party to recover damages is founded upon the *negligence* of another, he is bound to show that he himself was not in fault ; he ought to have established the fact that the lights required by statute to be shown on board vessels, lying at anchor in the Hudson in the night time, 1 *R. S.* 685,§ 12, were shown on board his vessel. The fact, instead of being established, was rendered, by the testimony of the defendants, at the least very doubtful ; and the defendants complain that the judge characterized their testimony as negative, whereby they are apprehensive the jury were misled. The damages also are excessive, not warranted by the testimony, and can be accounted for only on the assumption that the jury took into the estimate damages not recoverable in a proceeding of this kind. *Damage to the vessel,* and that only, is recoverable in this proceeding : *Statutes of* 1831, *p.* 421. The jury are not authorized to take into consideration the interruption to the business of the owner of the vessel, nor can they give vindictive damages. Even in an action on the case against the owners of the steam-boat, for the negligence of the master, vindictive damages could not properly be given.

*H. P. Hunt & J. P. Cushman,* for the plaintiff, insisted that, had it been shown that there were no lights on board the plaintiff's vessel, the plaintiff would notwithstanding have been entitled to recover, as the only effect of the want of lights is to subject a party to a *penalty,*1 *R. S.* 685, § 12, and not to deprive him of a right of action ; but if it was incumbent upon the plaintiff to have lights, the jury, by their ver-

dict, have said that he was not in fault. Nor will the court interfere with the verdict on account of its amount. It is the peculiar province of a jury to assess the *damages* in cases of this kind ; and where the testimony is contradictory, as in this case, the verdict will not be set aside, unless the evidence very strongly preponderates against it, even though the opinion of the court should be at variance with the verdict. *Grahams's Pr.* 513, 514, *and cases there cited.* 12 *Wendell,*27.

NEW YORK,
May, 1835.

French
v.
Cutler.

*By the Court,* SAVAGE, Ch. J. The action in this case is *debt on bond* in point of form, but in substance it is an *action for damages* for wilfully or negligently running down the plaintiff's sloop. The case was very fairly submitted by the judge to the jury, and if either party has reason to be dissatisfied with the charge, it is the plaintiff; not the defendants. The cause seems to have been tried, and was argued in this court, upon the assumpsit that the plaintiff had no right to recover, unless he had lights in the rigging of his vessel, as prescribed by statute, at the time of the collision. Whether such lights were indispensable to a recovery is not a material question in this case ; no opinion will therefore be given upon it. The true question is, did the collision take place by reason of the *negligence* of those who navigated the steam-boat? The jury have answered in the affirmative.

The damages are said to be *excessive.* On that point there was no misdirection. The judge directed the jury to find a verdict for the *actual loss;* by which I understand him to mean the *actual damages* done to the vessel—not the damages which the plaintiff may have sustained by the loss of the earnings of the vessel, or any other contingent damages. The rule of damages in this mode of proceeding should be the amount necessary to *repair the vessel*—to put her in as good condition as when the accident happened. This necessarily results from the provisions of the statute. The remedy is given for the *damage done to the vessel ;* not the damage which the owner may possibly sustain as consequent upon the collision. If the owner wishes to recover such damages, he should bring his action on the case, as he might before the statute was passed. Again ; this proceeding must be commenced with-

in twenty days, and the amount of damages must be ascertained and shown to the officer issuing the attachment, and the penalty of the bond must be in double the amount of the damage; but if the amount depended upon such vindictive damages as a jury might give, those might exceed the penalty of the bond. But the facts that the legislature consider the damages capable of liquidation within twenty days, and that no other damage is mentioned but the damage sustained by the vessel, and conclusive to my mind that none but *actual damages to the vessel were intended to be recovered in this form of proceeding*. It is considered in the nature of a debt, like an account by a mechanic for work done, or materials found for the building or repairing a vessel, or provisions or stores furnished; and, like them, these damages, when liquidated before the officer by *ex parte* affidavits, become a lien upon the vessel doing the damage, until a bond is given; then the proceeding is upon the bond, but there is no reason why any other rule of damages should be adopted. The object of giving the bond is to discharge the vessel from the lien, and substitute personal security for the damages; not to vary the rule of ascertaining those damages. The obligors in the bond are substituted in place of the vessel, to be responsible for the amount recovered.

The witnesses all speak of actual damages, but they vary in their estimates from $300 to $1500. The two who estimated the damages at $300, evidently estimated only part of the damage; they were of opinion that part of the trunnels had been started before the collision, and they did not estimate the injury to the rails and rigging. Three others estimated the cost of repairs at $1000, and one, the captain of the sloop, at $1500. I should have been better satisfied, if the verdict had been less. Those who estimate $300 as the cost of repairs, say the sloop, before the injury, was worth only from $800 to $1000. The liquidation of damages and the credibility of the witnesses are peculiarly the province of the jury. Their verdict, on either ground, ought not lightly to be interfered with, unless there has manifestly been a mistake, or there is reason to suppose that the jury have been in-

fluenced by passion or prejudice. The damages appear to be excessive, and therefore a new trial should be granted to re-try that question only, upon payment of costs.