By the Court. Slosson, J.
The defendants object to the plaintiff’s right of recovery mainly on two grounds :
1st. That the work of regulating and grading the street and avenue was a public work, lawfully undertaken by the defendants, at the solicitation and for the benefit of persons hiring and owning property on the line of the street and avenue, as well for the plaintiff as for the public generally, and under the authority vested in them by the laws of the State; and that the *413 whole subject of the grading of the street, both as to the time when it should be done or contracted for, and whether with or independently of the grading of Second avenue, including also the terms of the contract, and the grade itself, was among the discretionary and legislative powers of the Corporation of the city; and that the defendants were not liable for the manner in which they exercised such powers.
2nd. That Keon and Gallagher, in the performance of their contracts, were in the exercise of an independent employment, and that they, and not the defendants, employed the workmen; and that the plaintiff’s remedy, if any, must be against them. Tills latter ground of defence was not, however, pressed on the argument. Nor do we think, under the facts of the case, and the authority of the cases hereafter cited, that it could have been urged successfully. The grading of the streets was done under the direction of the surveyor, Smith, acting under an appointment from the defendants, and the work was done by Keon in conformity with his directions, and he accepted the work for the defendants, and this power of supervision was reserved in the contract itself. Besides, it has been expressly held that the contractor stands in these cases in the relation of agent to the Corporation (Delmonico v. The Mayor, &c., 1 Sandford’s S. C. R. 222).
The defendants also insist that they are not liable for the loss of plaintiff’s profits during the period occupied in repairing his wall.
The court charged the jury, “ that if they believed that the injury to the plaintiff’s wall was caused by the standing of the water in Thirtieth street, and that such water would not have stood there, had Second avenue been excavated cotemporaneously with the street, or had a drain been made to carry off the water from the excavation in the street, then the defendants were liable, and the plaintiff entitled to recoverand further, “ that the excavation in Thirtieth street and that in Second avenue, necessary to be made to bring the street and avenue to a grade, were to be considered as one work or act, and that it was, as matter of law, negligence for the defendants to contract the grading of Thirtieth street to be completed before the completion of Second avenue, adjoining to Thirtieth street, when *414 from the situation of the ground, the result must be to make a deep excavation in Thirtieth street, into which water must flow without any possibility of escape.”
The court also charged, that the plaintiff was entitled to recover, as part of his damages, the loss of profits during the suspension of his business to repair.
1. That a municipal corporation, though clothed with many of the attributes of sovereignty, may be made liable, ci/oiliter, in damages, to any person who may sustain injury from an improper, negligent, or wrongful exercise of its legitimate powers, cannot be doubted, at least since the decision of our court of highest resort, in The Mayor of New York v. Bailey, 2 Denio, 433 ; The Rochester White Lead Company v. The City of Rochester, 3 Coms. 463 ; and Radcliff's Executors v. The Mayor of Brooklyn, 4 Coms. 195. See also the case of Delmonico v. The Mayor of New York, 1 Sand. S. C. R. 222.
The case of Wilson v. The Mayor of New York, 1 Denio, 595, is in reality not in conflict with the cases above cited, the action being in that case for damages, for not constructing a sewer to draw off the water from plaintiff’s lot, upon which it was caused to flow by the grading of the street and avenue, effected by the defendants.
The question of negligence in effecting the grading itself, did not arise, but the action was founded upon the theory, that the Corporation was civilly liable in damages for not exercising one of their admitted powers, that of constructing sewers. The court held in that case, that for the omission or refusal to exercise a purely discretionary or judicial power, no civil action would lie against a public officer, even though the duty be an imperative one, though he might be liable to an indictment for a wilful violation of the duty; but the case expressly admits, that where the duty is a, ministerial one, though cast upon an officer whose chief functions are judicial, he is civilly amenable for the improper exercise of the power.
The point involved in the present case was expressly decided in the case of the Rochester White Lead Company, above cited, in which the distinction between judicial or discretionary duties, and those purely ministerial, was clearly taken. Up to the point at which a duty ceases to be one of the former de *415 scription, a public officer is not amenable to an individual in a civil action for the exercise, or the refusal or neglect to exercise the duty, but the moment the duty ceases to be of this character, which it does when the election to perform it, is made, this immunity also ceases. The execution of the work itself is purely ministerial, and thenceforth the public officer becomes subject to the same rules which govern the liabilities of private individuals, and, like them, is liable in damages for the improper or negligent exercise of the duty. Thus, the ordinance of a city or municipal corporation, directing a public improvement to be made, is the exercise of a purely, judicial or discretionary function, and for such exercise, the corporation is not liable in a civil action; but the prosecution of the work itself, the carrying of the improvement into execution, is ministerial in its character, and the corporation are bound to see that it is done in a proper manner, or, like an individual, they will be responsible in damages.
We think this principle too clearly settled for doubt, and applying it to the case before us, there can be no question that the defendants derive no exemption from responsibility, for the manner in which they have performed or carried out the improvement or grading of Second avenue and Thirtieth street, by reason of their possessing, in respect to the improvement itself, a discretionary or judicial power; such discretion ceased to act as a shield of protection, when it reached its own limit, which was, at the passage of the ordinance for the improvement ; all, after that, was ministerial, and the only question is, whether they have so negligently performed the latter duty, as to work an injury to the plaintiff’s premises.
There is another principle which has been directly applied to municipal corporations possessing, like that of the city of New York, in respect to the public streets, a property in the subject of the improvement. In such cases, the sovereign character is lost in that of the individual owner, and the corporation is held liable, as any other owner of lands improved for the owner’s benefit, for the manner in which the improvement is effected. “ By the general principles of the common law,” says the Chancellor, in Bailey v. The Mayor, &c., 2 Denio, above cited at p. 445, “ the owner or occupier of premises was liable for any *416 nuisances, on the ground that he was bound to control the use of his property, and to use it in such a manner, as not to produce injury to others,” and he placed his vote in favor of the affirmance of the judgment of the court below, expressly on the ground, “ that the dam was the property of the corporation, and that the corporation was bound to see that its corporate property was not used by any one, so as to become noxious to the occupiers of property, on the river below.”
The court instructed the jury, that it was, as matter of law, negligence in the defendants to contract for the grading of Thirtieth street, to be completed before the completion of Second avenue, adjoining that street, if the result was necessarily to cause the excavation in the street to be filled with water, without any possibility of escape, and that the excavation or grading of the street and avenue was to be considered as one work.
In this, we think the learned judge who tried the cause ruled correctly.
Although the defendants may have a discretionary power as to the time when a public improvement shall be effected, it is hardly sensible to say that they are at liberty to divide up the improvement, after- it is determined upon, into parcels, and to order one part to be effected at one time, and another at another, if the inevitable effect of such a parcelling out of the work, will be to work damage and injury to the adjoining property.
The grading of the street and avenue were necessarily cornponent parts of one and the same improvement, since neither would have been complete without the other, but on the contrary, either, finished before the other, would have rendered nugatory the improvement as far as it had gone, and would have converted it, as was abundantly shown in the present case, into a nuisance. It was therefore one work, one improvement, and to contract for a part to be finished before the other, or without reference to the other, if thereby inevitable injury would be caused, is as much negligence, as it would be so to contract for the performance of the entire work, as to render it, when completed, a necessary source of injury and damage to surrounding owners.
*417 Such a contract would be, in itself, conclusive evidence of negligence, assuming, as the proposition does, that its execution would be productive of inevitable injury. The question of whether such injury did in fact follow, may be a question for the jury (and in the present case was, in effect, submitted to them), but that fact once found or admitted, and the law affixes to the contract itself, the character of negligence, as a necessary consequence..
The contract for the street was, by its terms, to be completed on or before the 27th of May, while that for the avenue was not made until February following, and was not to be completed until the November succeeding its date; thus, by the very terms of the two, interposing an interval of eighteen months between the completion of the two works.
But if the learned judge was wrong in this ruling, which we think he was not, and if the two are to be considered as separate and independent improvements, he was clearly right in submitting to the jury the question, whether a drain might not have been constructed to carry off the water from the excavation in Thirtieth street; and in his ruling, that if they found that question affirmatively, the plaintiff was entitled to recover; and in his refusal to charge, as requested, that if the jury believed that the excavation in Thirtieth street, and bringing the same to a proper grade, was done in a proper and skilful manner, and that the standing of the water in the excavation thus made, must of necessity result from the doing of the work, the plaintiff could not recover of the defendants, for injury resulting therefrom.
When the question was put to the witness, whether it was possible to have constructed a drain to take the water off, the question was objected to, on the part of the defendants, on the ground that it was not incumbent upon the defendants to make drains.
The construction of drains and seiners, as an independent work, is one of the discretionary duties of the Common Council, for the exercise of which, or the omission or refusal to exercise which, they are not responsible; but the construction of a drain, as a part of the general plan or method of effecting a grading in a street, and as auxiliary to the principal work, is *418 another thing, and its necessity or propriety, equally with that of any other portion or detail of the work, is properly to be taken into consideration in determining the question of negligence, as applicable to the manner in which the principal job is done.
Even if the two improvements (the grading of the street and avenue) are to be considered as separate undertakings, and not as one work, we hold that the- Corporation were bound to see that each was done properly,, and' in a way to prevent mischief; and that all precautions which could have been, should have been taken, against the danger- ©f damage to adjoining owners. The evidence is explicit, that a drain could have been constructed into the Second avenue- sewer, or by cutting through the avenue, by which the water would have been drawn off, and thus .all injury to the plaintiff’s premises prevented.
The true rule on this subject is-laid down in the case of The Rochester White Lead Company,, above cited: “ In the construction of a work like this (the construction of a eulvert), they (the Corporation of-the city of Rochester) were bound to exercise that care and prudence,, which a discreet and- cautious individual would or ought to use, if the whole loss or-risk were to be his alone.” And again, in the case of Bailey v. The Mayor, &c.: “ The degree of care- and foresight which it is necessary to use in cases of this description, must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence, which is to be anticipated and guarded against.”
Any other rule, would put it in the power of the Corporation, so to conduct .public improvements,, as to- ruin the citizen and leave him remediless. If it was no part of the duty of the defendants, in effecting the grading of Thirtieth street, to have taken precautions against the accumulation of water in the excavation, for which no outlet existed, then, if the grading of Second avenue was an independent matter, and they were not bound to order it, except at their own pleasure, this mischief might have been perpetual. Such a doctrine finds no support in reason or common sense. The true rule, we apprehend, is that laid down by the judge at the trial, that the two improvements are to be considered as one work or act; but in either *419 aspect of the improvement, we think the plaintiff entitled to recover ; in the one, it was negligence in law, to have contracted as the defendants did contract, and in the other it was negligence in fact in the execution of the work, to have omitted the drain in question ; and to this latter conclusion the case of the Rochester White Lead Company is an authority in point.
2. The only remaining question is, whether the judge erred in charging the jury that the plaintiff was entitled to recover as part of his damages, the loss of profits, during the suspension - of his business, while the repairs were being made to his wall."
These were specially found by the jury to be $200.
The jury do not appear to have taken into account, the amount paid the workmen, during the suspension of the plaintiff’s business. The proof was positive, that at the time of stoppage, and on the resumption of the work, the plaintiff was making a profit of from $25 to $30 a day.
The price of matches was fixed at a certain per cent, advance upon the cost of manufacture, depending on the-quality, and the plaintiff was manufacturing, at the time- the- work was stopped, from 350 to 400 gross of boxes of matches per day, and had continued to manufacture at that rate,, when at work, down to the time of trial. The time during which the work was suspended, was from twelve to fourteen: daysthe amount of the verdict is, therefore, less than,, at the lowest computation, the plaintiff would have made, had there- been no-suspension of his business.
The question of,, how far profits-may be recovered,,as part of the damages, on the breach of an executory contract, is- one of very considerable difficulty- It is not contended that remote, or speculative, or merely contingent profits, would: form a proper element of damage, such as would- be the profits of a collateral speculation, or such as were the profits claimed in the case of Giles v. O'Toole, 4 Barb. S. C. 261, to wit: the profits which the plaintiff might have made in carrying on his business on the premises which he had leased, had the lessor not refused to give him possession; and especially where such profits are established only by the opinion of witnesses; but profits which are the direct fruits of the contract, stand upon a different footing.
*420 In Masterton v. The Mayor of Brooklyn, 7 Hill, 61, it was held, that the plaintiff was entitled to recover the difference between the contract price and what it would have cost him to furnish the marble according to the contract, taking into consideration, in determining such cost, the outlays and trouble, and the contingencies and risk, inseparable from the execution of the contract. Such difference would have been his certain profit, had the agreement been fulfilled.
In the case of Waters et al. v. Powers and Shirley, 20 Law and Eq. Rep. 410, the court held, that in an action for the nonfulfilment of a contract to furnish certain machinery, within a certain time, the plaintiffs were entitled to recover, as part of their damages, the profits which they would have made (had the machinery been furnished) from a contract which they had made with a third party, to supply him with so many gross-of bobbins per week, the supply of which was interrupted for 20 weeks by the defendant’s failure to furnish the machinery. The amount of such profits was agreed at a certain sum.
The same objection was taken-in that case as in this, that the damages were too remote; but the court said: “ The defendants undertook to perform a contract within a reasonable time, and failed to do so—the plaintiffs say, we should have made certain profits had the contract been performed—the jury are not bound to adopt any specific contract that may have been made; but if reasonable evidence is given that the amount of profit would have been made, as claimed, the damages may be assessed accordingly.” • ;
Applying the principle of these cases to that now before us, we think the profits, lost by the suspension of the plaintiff’s works, in consequence of the damage resulting from the negligence of the defendants, constituted a proper item of damage. They were a direct consequence of the injury. They were proved to as approximate a certainty, as any future event could be proved. They were profits in the principal business which was suspended by the injury, and not those resulting from some collateral or independent transaction, and they were proved, not by the opinion of outside witnesses, but by the positive testimony-of the plaintiff’s own foreman, who established conclusively a uniform daily profit of from $25 to $30, upon a fixed *421 price for the matches, and that the amount manufactured was at the same rate, before and after the repair of the injury, down to the very day of the trial.
We think, on the whole case, that the judgment should be for the plaintiff.