Robertson, J. (dissenting.)
The first question which.this case presents is whether the corporation of the city of Hew York can bind themselves to pay for gas furnished to public lamps in said city by a contract made in any other mode than according to the first section of the statute of 1861, “ relative to contracts,” by such corporation, (Laws of 1861, ch. 308, Val. Comp. C. N. Y. 480,) and the thirty-eighth section of that of 1857, amendatory of the charter of such city. (Laws of 1857, ch. 446, Val. Comp. 278.) In regard. to a prior statute to the same effect, (Laws of 1863, ch. 217, § 12,, Val. Comp. 266,) this court has twice decided at general term, (Brady v. The Mayor of New York, 2 Bosw. 173; S. C., 20 N. Y. Rep. 312; McSpedon v. Same, 7 Bosw. 608,) that in reference to work to be done, or supplies furnished, they could not do . so. But for the authority of these cases I should have been inclined to think such corporation cóuld so bind themselves. In the first place, long before either of these statutes *130 •were passed, such corporation were authorized to make contracts ; that was done by a far earlier charter ; and it is settled that a new law giving rights similar to those previously existing, but in a modified form, is not to be construed as excluding the exercise of such rights in such prior form, without express words or unavoidable implication to that effect; (Fairchild v. Gwynne, 14 Abb. 121. Evans v. Chapin, 20 How. Pr. 289.) In the next place, the statute of 1857 (§ 40) provides a sanction for its requirements by punishing criminally the officers who violate them ; and it would be an absurdity and oppressive to punish them for an act not only void, but necessarily carrying with it the evidence of its invalidity for all purposes. '
The title of the act of 1861 intimates that its purpose was rather to control officers in making contracts, than to restrict the power of the corporation to make them. The contracts, also, to be made by such corporation, are not mere private ones for their own private advantage; they are the discharge of a public duty for the public benefit; and rather than have the public suffer for the want of that which it was the object of such contract to accomplish, forms, although prescribed by statute, if not indispensable to such purpose, may be disregarded as not of the- essence of such contract. (Cole v. Green, 6 Man. & Gr. 872.) For a similar reason a disregard of statutory formalities does not vitiate an election either of public officers, (People v. Cook, 8 N. Y. Rep. 67; Cunningham v. Cassidy, 17 id. 276,) provided the will of the actual voters at such election is not thereby defeated, or the officers of private corporations. (Matter of Mohawk and Hudson R. R. Co., 19 Wend. 135. Matter of Chenango County Mut. Ins. Co., Id. 635.) It would be a greater injury to have the city of Hew York in darkness at night by reason of a failure by the city corporation to observe the statutory forms in making a contract for lighting it, than to make such a contract binding.
The statutes of 1857 or 1861 do not expressly exclude all other forms of' contracting, except that prescribed ; which is necessary to create a prohibition; and they require a security *131 to be given for the performance of every contract, to be approved by the comptroller, before it is binding; neither of which acts is to be done by the corporation, or forms a limitation of their mode of making contracts. The exposure of every contract to offers by advertisement was for the benefit of the corporation, not of the bidders. A mandamus will not lie at the instance of the lowest bidder, “ who has given adequate security.” (People v. Smith, 2 Abb. 33. People ex rel. Beldon v. Contracting Board, Court of Appeals, Feb. 1865.) So that a contract under the statutes of 1857 and 1861 does not become complete and binding merely by force of the advertisement for offers and a bid ; otherwise there would be no necessity for having them signed by the heads of departments, in the name of the corporation.
These considerations were overlooked in the the two cases already cited, decided in this court y possibly they might have given a different direction to the decision, if they had been presented ; but as they stand unreversed, I feel bound to yield to their authority. To whatever criticism the first of those cases (Brady v. The Mayor, &c.) may be subjected, as authority for the doctrine that the city corporation can only contract for supplies and work pursuant to the statutes of 1857 and 1861, upon the ground that in it no cause of action founded upon an implied contract was alleged in the complaint, and no evidence was given on the trial before the referee of the worth of the services of the plaintiff, the second of such cases (McSpedon v. The Mayor, &c.) is entirely free from it. In that case such a cause of action was alleged, evidence was furnished of the value of the services, the point was distinctly made by the counsel for the plaintiff, and passed upon by the court in its opinion. This court in giving its opinion, even in the first case, by holding that no cause of action could arise for work done, where a contract had been attempted to be made in a form forbidden by law in relation to it, fixed the kind of illegality attached to it; it not only considered it as being incapable of being enforced in the form in which it was made, but also in the light of a violation of a prohibitory statute, such as *132 those forbidding acts as against, public, policy, (Bissell v. Mich. S. and N. Ind. R. R. Co., 22 N. Y. Rep. 297 to 305, per Selden, J.) so that acts done under them could confer no rights. Such a view necessarily excludes a right. to recover upon, a quantum meruit for the services which had been rendered under a contract made in a. form forbidden by statute. The greater part of the opinion of the court in that case was devoted to examining whether the plaintiff could recover upon an implied, contract if the special contract were illegal, as had been held by the referee. In the course of that examination' the power of such corporation to make such implied contracts was fully discussed. But in the second of those cases (at the hearing of which, the learned judge who delivered the opinion1 in the first case, sat upon the bench, without, expressing- any change of views) this court expressly held the decision in the prior case to be decisive of- the question ■ of the want of power to make such contracts for supplies and work in any other than the statutory mode.
The language employed by the learned judge who delivered the opinion-of the court, in the first case, was quite strong and emphatic. He considered “ the answer” to the question, whether the defendants were liable to the plaintiff -upon as quantum meruit, because the work had been performed and was accepted, “ inevitable and too obvious to allow of extended discussion;” if “ answered affirmatively, * * officers and agents through whom alone the corporation could act, might disregard the statute, and in practice repeal it.” It was to “ the mind of the court the prominent objection to the plaintiff's case, and laying out of view every other objection * * it seemed to them fatal to it.” He founded such conclusions upon the principle that where- a statute has defined the mode of making a contract, no other could be adopted, citing therefor a remark in the case of The Farmers’ Loan and Trust Co. v. Carroll, (5 Barb. 649,) and holding that persons dealing with such corporation were bound to know the restrictions upon its powers.
In the second of such cases, in which, as I have stated, the *133 same question was fairly and technically presented by the pleadings, it was again considered by the court. The learned judge who delivered its opinion, declared in, if possible, still more decided language, that such city corporation could “ make no contract' or-promise, express" or implied, except in-the manner and with all the formalities prescribed by the statute. Ho promise or engagement, or act of acceptance or ratification, by the officers or agents-of a corporation thus incapacitated, could render it liable or give to any one-a cause, of action "against it.” Adding, that a “ different doctrine would render void all attempts at legal restraint upon the conduct or acts of the defendants.”
It is true that in neither of such cases was the question directly discussed, whether the - statute under consideration, (1853,) from which the statute of 1857, in that respect, was copied, was absolutely ■ restrictive on the power of the city corporation to: make contracts, or only directory, and guarded by penal laws against officers who should violate or evade it. It was perhaps assumed that it was the former ; but whether this court was then right or wrong in that view, I do not consider that it is now at liberty to disregard such solemn and reiterated decisions, whether well or ill founded, or accompanied by the reasoning on which it was founded, or not.. The fact that other grounds were given in the first case for the. decision would not impair the authority of the second, sustained as it is by the necessity for such: decision therein, and by its own reasoning as well as that of such first casé.
That view óf the law would be decisive of this case, if furnishing gas for the public lamps be supplies furnished, within the meaning of the statutes of 1857 and 1861, to be contracted for by a proposal and bids, and a contract therefor is not excepted therefrom. But it is contended that some obligation was imposed upon the corporation to consume and pay for the gas of such company, and some correlative right vested in the latter-to furnish such gas, leaving the-value to be subsequently and . otherwise determined ; and that such obligation and right arose from the formation of the Harlem Gaslight Com *134 pany under the general law for forming such companies. (Laws of 1848, ch. 37, § 18 ; 3 Stat. at Large, by Edmonds, 849,) the imposition on the city corporation, or the department of streets and lamps, by the charter of the former, or the amendments thereto of 1849, creating the latter, (Val. Comp. 260,) and those of 1857, (ut supra,) of the duty of lighting the city, and the license by the common council of such city to such company to lay main pipes to conduct gas for lighting lamps through a certain portion of such city, pursuant to the eleventh section of such general act; and that the provisions of the statute of 1857 and 1861, in regard to contracts before referred to, were not applicable to the mere determination of the value of the gas so to be consumed. The fact that the lowest price for all kinds of supplies necessary for the discharge of the duties of the city government is the main, if not almost the sole, object aimed at by the restrictions on the mode of making contracts prescribed by such statute, would be á complete answer to any supposed efficacy in dispensing with such restrictions, attributable to such an indefinite obligation or right; and the supply of that ingredient would be essential to make such an obligation so definite a contract as to be capable of being enforced in a court of law. But I have been unable to bring myself to the conclusion, that the mere imposition of a duty upon a municipal corporation to light public streets, accompanied by the grant of a power to it to license the laying of gas pipes in such streets by gas companies created under a general act of incorporation ; and the actual creation of a company under such act, and a license granted to it by such corporation to lay such pipes in a particular part of the city, either created any obligation by the latter to give to the former the exclusive privilege of furnishing gas to light that part of the city, or relieved such corporation from the duty of making such contract in the mode in which they would have been bound to make it, if the gas company had been a private individual, and the license to lay pipes had been granted by some other person or body. Such city corporation might, it is true, virtually create a monopoly by refusing to license another company to lay gas *135 pipes as a competitor to the first; but it is clear it could not have the right to do so merely to prevent competition. Any abuse of its discretion in that respect, which is a public trust, if it could not be corrected by the courts, might be by the legislature. And although it may be a matter of mere form to advertise for bids, if all other licenses were refused, because but one bid could be "given, and that by the existing company, the publicity of the advertisement and bids might at least operate to call the attention of the public to their character. The members of the corporation might also, at least, determine whether an exorbitant demand should be complied with; for I cannot construe the statute of 1861, any more than that of 1857, as creating a contract ipso facto in favor of the lowest bidder, without the possibility of escape therefrom by the municipal authorities. A contract, at all events, so made, would be determinate. Any corrective for the greed of a company or the negligence or corruption of a municipal corporation might be left to the legislature. At all events, no court being at liberty to hold that a statutory form may be dispensed with because rendered in its opinion useless, the remedy is with that same body.
I do not perceive the analogy of the cases of The People v. Flagg, (17 N. Y. Rep. 584,) The Farmers’ Loan and Trust Co. v. The Mayor, &c. of New York, (4 Bosw. 89,) or Smith v. Mayor, &c. of New York, (21 How. 1,) to a case like the present, where the monopoly or exclusive advantages of the company are the result of the joint action or omission of it and the municipal corporation. The first of such cases was for work done; and was put upon the sole ground of the individual and peculiar skill of the party employed as a professional man, which would characterize his services, and could not be imparted to or employed or possessed by any other ; the second, upon the peculiar merits of a piece of land as a building site for a market; and the third, upon the ground of the suddenness of the occasion for the services to be rendered, and the impossibility of ascertaining beforehand their duration. There could certainly be no such peculiar quality in the gas to be *136 furnished hy the company for lighting purposes, as to make it essential that its manufacture alone should he used. Ho peculiar mode of lighting the streets is imposed upon such municipal corporation as a duty ; and the latter; after ascertaining, without any advertisement for bids, that the only company in1 existence could not or would not' furnish .the gas at a reasonable price, are not debarred from adopting other methods of lighting the streets, in case a new company should not be formed. The duty was imposed before the company was created, and the regulation of its performance must be carried on without regard to the existence of" the latter, unless directly required bylaw to be contracted with for its performance. "
Another argument in favor of the company is drawn from a supposed irreparable- injury, in case -a contract for furnishing gas fór lighting the Streets in the district which it ’supplies, is not entered into with it.' If that be so, it clearly has the monopoly, and may dictate its own terms. The legislature, however, could not have intended to give it such power, at least so far as the first cited acts were concerned, or they ’would have done so in -express terms. Hone of their -acts aré tó be-construed as intended to produce that result, unless as an inevitable consequence. Remedies for want of light or substitutes for gas, however inadequate to take its place entirely, may always be provided. It is an alarming power tó be possessed by any one, to be able to prescribe on what terms an indispensable article shall be supplied, in consequence of their monopoly óf it. If they really possess it, a contract would be unnecessary; they only néed prescribe the terms in order to become entitled to them; I' do not, therefore!, think the argument ab incorivenienti sufficiently strong to take the case out of the statutes of 1857 and 1861. ■ ■ '
It can hardly be necessary to discuss the question whether gas is a supply, within the meaning of the statute. It must be equally so with any other illuminating, fluid, although gaseous in form and flowing "through pipes, instead of being carried in vessels and measured by a meter instead of a vessel of liquid measure. I can find, therefore, no reason for exempt *137 ing the gas company in this case from being subjected to the statute of 1857 as to making a contract in the mode therein prescribed, if that is inevitable in all cases of supplies furnished. But even if it were otherwise, it would be difficult to establish, from the facts admitted in tins case, any contract by:the city corporation with the company, since such contract must be made either directly by the former or by agents ■ lawfully authorized to make the same, of neither of which is there sufficient evidence in this case.
With the exception of public lamps on the Eighth avenue, between Eighty-fourth and One Hundred and Twenty-fifth streets, which were ordered to be lighted since September last, no direct action was taken by the common council' of the city since their first contract of July, 1860, requiring lamps supplied by the company with gas under it to be continued to be so supplied. The materials for any agreement for that purpose, as detailed in the case submitted, consist of the ordering and furnishing by such common council, of lamps placed within the districts lighted by the company; and paying for their erection and for the gas consumed therein,'until the month of September last, at' a" rate-fixed by a -Written contract, which expired in July, 1860. During that month the public lamps in such district were lighted with gas furnished by the company, under the superintendence' and by the' direction of the superintendent of gas and lamps, during the parts of the day designated by the street commissioner. In August last, notice was given by the company of an intention to raise the price of such gas, after the 1st of September following, to that now claimed by them. I have not been able to satisfy myself that the connection of the lamps erected by the common council with the gas pipes of the company, and the payment by the former of bills for furnishing of such lamps with gas down to September, 1864, and the furnishing of such gas by the company, and lighting of such lamps subsequently, under the direction of such superintendent, would together create a direct contract by the city corporation with such company, to pay for the gas consumed during such month of September, at the *138 rate mentioned in such notice, although admitted to be its reasonable value. Such first contract might possibly, upon the principles applicable to leases of houses or hiring of servants, or an established custom, be assumed tó be continued on the same terms. (Jackson v. McLeod, 12 John. 182. Anderson v. Prindle, 23 Wend. 616. Evertson v. Sawyer, 2 id. 507. Chitty on Cont. 20, 323.) But unless the goods furnished at the enhanced rate were actually received by the party to whom they were furnished, or their agents duly authorized for the purpose, after notice of such price, such party would not be bound for that price. In no case would previous express or implied contracts to pay at a different price bind the city corporation to pay at such enhanced price, and they may therefore be discarded as evidence of a contract at the latter price for September^ 1864.
The corporation of the city of New York cannot be said to have actually accepted and consumed the article in question, unless by authorizing its receipt and consumption by others. Although charged with the performance of public duties, and representing the public in their discharge, they are not so identical with that public, who enjoy the benefit of the consumption of the gas, and may thus be said to have received it, as to become liable by such receipt. For the benefit so received there is no mode of reaching such public by an action.
If, therefore, the gas was not to be considered as furnished under an implied contract at the same price as before, or any express or implied direct assent of such corporation to a new price, the superintendent of lamps derived no new power to bind the corporation for such price from any previous consumption of gas without a contract, and payment of a ■ less price, since all the power he had was derived from the recent statutes altering the city charter. He was not an agent of the corporation as an artificial person or body corporate ; but only of that portion of the public who might inhabit, and be liable to taxation in, the county of New York, pursuant to authority delegated to him by statute. (Darlington v. The Mayor, &c. of New York, 31 N. Y. Rep. 164.)
*139 By the amendments of the city charter in 1857, (Val. Comp. 268,) thé legislative power only of the body politic known as “The mayor, aldermen and commonalty of the city of Mew York," was vested in a common council, an elective body, (§ 2 ;) its executive power in a mayor, also elected by the people, and executive departments, (§ 16,) composed of various officers, some of whom were elected, (§ 19,) and some appointed, (Id.;) such executive department have various duties assigned to them, (§§ 22 to 29,) and their heads are to be appointed by the mayor, with the consent of the board of aldermen, (§ 19 ;) in several departments, (including the street department, (§ 23,) bureaux are created, (§§ 22, 23 to 28,) whose chiefs are to be appointed by the head of the department; (§ 21,) the power of creating other bureaux besides those specially named, is delegated to the common council of such city, as well as that of assigning to them and to the departments and bureaux thereby created, duties not inconsistent with that act, (§ 28.) Such statutes also directed the duties of such bureaux and departments to be performed according to the laws, charter, and ordinances of such city (Id.) Among such executive departments is “ the street department," to have cognizance, among other things, of “ lighting streets, roads, places, and avenues." A bureau in such department is called that “ of lamps and gas,” and its chief officer “ superintendent of lamps and gas,” • (§ 23.) The common council of such city, in their legislative capacity, discharged the duty devolved on them by such statute, of assigning to various departments, including the street department and its various bureaux (including that of “ lamps and gas,”) various duties in regard to the matters placed under their cognizance by such statute, bypassing various ordinances in relation thereto. Such ordinances were revised and repassed in the year 1859, and the duties and powers of the street department and bureau of lamps and gas are to be found in the first, second, and ninth articles of the fourth chapter of that collection. By them, such department was to have cognizance of the same matters as was prescribed in the twenty-third section of such statute, as well as doing and furnishing *140 all necessary work, repairs, and supplies, not provided for. in other departments. (P. 79, § 1.) The chief officer of it,: (street commissioner,) was to have general charge and direction of all matters intrusted to it.' (P. 80, § 3.) He is required to make all contracts for “ work, material, or supplies/’ relating to any of the matters under the ^cognizance of his department. (Icl: § 5.) But all expenditure over a certain sum ($250) is forbidden to be made for any work or supplies within such cognizance, unless authorized by the common council. ■ (Id. § 6.) The bureau of lamps and gas1 is also thereby charged with the duty of superintending the lighting of the public streets, and the constructing of, and procuring necessary supplies and fixtures for public lamps. (P. 98, § 77.) The head of it (superintendent) is required to take charge of,, and superintend" the lighting of such lamps, (p. 99, § 80 ;) to report to the street commissioner " violations -of contracts ■ for supplying the city with gas for such lighting, (Id. § 82,): and to be under the control of such commissioner generally, in all matters connected with his bureau. (P. 100, § 87.) The statute of 1857 also forbade the incurring of any expense by- any- department or officer, whether ordered by the common council'or not, without' a previous appropriation to cover it. .
It seems to be settled by the recent cases of Darlington v. The Mayor, &c. in the Court of Appeals, supra, that the corporation of the city of New York is in no sense a private one, except- so far as it can take, hold, or transfer property, and then only as the: representative of the; state; of course, with the samé rights and liabilities in relation thereto as other owners. (Brower v. The Mayor, &c. 3 Barb. 254. Lacour v. Same, 3 Duer, 406.) Its “boards ‘of aldermen and councilmen and other Officers ” are, in the prevailing opinion in that cáse, declared to' be-' “as truly public officers as the boards of supervisors and sheriffs'and clerks of counties'.” The devolution upon the street commissioner and chief of the bureau of lamps and gas of the duties prescribed in the statute of 1857, or ordinances made ini pursuance thereof, rendered" them also, as to such duties, quasi civil and public officer's, and not mere *141 servants of the corporation. (Martin v. The Mayor of Brooklyn, 1 Hill, 545.) .. How far by such devolution the corporation was relieved from any liability, by indictment or action, for the non-performance of such duties, may be still an open question. (Martin v. Mayor, &c. of Brooklyn, ubi sup. Weet v. Trustees of Brooklyn, 16 N. Y. Rep. 161.) Such powers may be concurrent, and. the exercise of them by either may relieve the other from all liability for non-performance. At all events, the discharge of such duties by the proper officer would not be, in any case, so far the result of his being an agent of such corporation, as to confer on him, as such, additional powers, not expressly granted, although their exercise might be necessary for the performance of such duty. In other words, the duty of superintending the lighting of public lamps would not carry with it the right of making contracts binding such corporation for furnishing an illuminating fluid.
The “ procuring all necessary supplies ” for public lamps by the superintendent of lamps and gas in section seventy-seven of the fourth chapter of the corporation ordinances did not refer to gas, as is evident by reference to the fifth, sixth, and eightieth sections of the same chapter. The first of those sections requires contracts for any supplies to be made by the street commissioner ; the second forbids any expenditure for supplies unless authorized by the common council, or the expense does not exceed two hundred and fifty dollars ; and.the, third requires the superintendent to keep such supplies in a place to be prescribed by a street commissioner.
Whether, therefore, the superintendent of lamps and gas was a public officer, whose power and. duties were limited by statute, or was an agent of the corporation whose authority was limited by such ordinances, he was not authorized to make any contract for furnishing gas, and any supposed consumption by him of that furnished by the Harlem company, by the lighting of burners of lamps through which it flowed, could not be an acceptance by the city corporation. The resolution of the common council passed after the month of September, 1864, for lighting lamps- in the Eighth avenue *142 from the gas of the company in the. same manner as the other street lamps in such district, could not be construed into a ratification of the previous • consumption of gas in lamps so previously lighted during that month. And there was no such other evidence of such ratification as to bring this case within those of Peterson v. The Mayor, &c. of New York, (17 N. Y. Rep. 449,) and The People v. Flagg, (Id. 584,) where the contracts of agents, or their fruits, were directly adopted or received by the corporation, with full knowledge of the nature of the contract.
I think, therefore, judgment should be given for the defendants, with costs.
J udgment for the plaintiffs. .