By the Court.—Monell, Ch. J.
The right of the defendants under the act of 1859 {JSess. Laws of 1859, ch. 311, § 9), to shut off gas from the premises of a person who is in arrear, depends wholly upon whether he is in arrear, and that is a question to be determined by evidence, and not by the will of the gas company. If the plaintiff was in arrear for any gas consumed prior to her application, the company had the right to require its payment, and, on neglect, or refusal to pay, to stop the supply.
But the right to shut off gas does not extend to arrears created by former occupants.
There was sufficient conflict in the evidence as to the occupancy of the house, as bearing upon the plaintiff’s liability for the prior bill, to make it a proper question for the jury, where it was very correctly left.
There were no exceptions to the charge, and none of the exceptions to the requests to charge were well taken, and the denial of the motion to dismiss the complaint was also, we think, correct.
Upon the law of the case, therefore, the judgment should not be disturbed.
But the appeal from the order denying the motion for a new trial enables us to look at the evidence upon the question of damages.
The action is for a breach of a contract, and it is not entirely clear, that loss of profits can be recovered as damages in such an action (Finch v. Brown, 13 Wend. 601; Fitch v. Livingston, 4 Sandf. 492, 514; Walter v. Post, 6 Duer, 363, 373).
If the loss of profits was the immediate and natural consequence of the breach of the contract, it might be recovered in a special action on the case, but not in an action upon the contract.
*188 The rule in any action, which allows the loss of profits to be estimated as damages, confines such loss to the immediate cause or breach. If they can not be traced directly to the breach of contract or duty, or are not the immediate result of the breach, then they are regarded .as too remote, uncertain and unreliable, to form the basis of damage (Lacour v. Mayor, 3 Duer, 406; St. John v. Mayor, 6 Id. 315).
The only evidence of damage was in the plaintiff’s testimony. She testified that at the time this gas was cut off she had eighteen or twenty boarders in her house. On an average they were paying her ten dollars a week. She made money other ways, kept a laundry, kept wine and beer, and anything they wanted to drink. Anything the families got was extra. She made, perhaps, one hundred dollars a month extra from the board. Her receipts per week were two hundred and twenty-five dollars to two hundred and twenty-seven dollars. More than half of that was for expenses. She had about one hundred and twenty-five dollars expenses, that left about one hundred dollars a week profit; but her own expenses, her living and that of her family included, and one hundred dollars, was clear of her expenses,—her rent and everything. The effect upon her business, of cutting off the gas, was, that her boarders said they could not remain without they had gas. She purchased a gas machine for two hundred dollars; the fixtures and putting up cost one hundred dollars more. She did not make it work ; the females were afraid of it; it was filled with gasoline, and there were children in the house. In the course of a month and a half or two months, her boarders all left her. Up to the time of the commencement of this action she tried to get boarders into her house, but did not get any. They asked her if she had all the modern improvements, gas. &c. She said she had gasoline ; but they were frightened, and would not stay in the house.. They *189 would not use lamps. The company’s mains are within one hundred feet of the house in Fiftieth-street, and also in First-avenue. This suit was commenced June 13, 1872. The damage she sustained, up to the time this suit was commenced, was, that she lost everything. She lost her profit, her living, her rent. Her profits alone were from three ^thousand dollars to three thousand five hundred dollars. She lost her business.
She was making one hundred dollars a week in Fiftieth-street. The details of her receipts, outside of the ten dollars a week which she charged for board, were, perhaps, thirty dollars to forty dollars a month, for washing,—that was her profit after she paid her laundress ; then the beer, dinners, and extras. She did not receive the same every week for the beer. She had got more for the beer,—perhaps fifty dollars or sixty dollars a month.
In St. John v. Mayor (supra), the court says: “The plaintiff showed the actual receipts of his hotel for a year or more, previous to the obstruction complained of, the actual daily receipts during the continuance of the obstruction, and again, the actual daily receipts for some months after the obstruction was removed.”
The plaintiff, in this case, laid no such foundation. She had not long enough conducted the business to make her then profits a test for all the future time she was deprived of the use of gas. She furnished but one instance of the loss of boarders because there was no gas in the house. They may have left for other reasons; and she might, as she did attempt, procure other light.
She had no such fixed and permanent business, continuing for a sufficiently long period, to make it a safe reliance for the future. It was hypothetical and problematical, and not such evidence as warranted the jury in believing that her business would have continued in the same flourishing condition had the defendants continued the supply of gas.
*190 The learned judge sufficiently cautioned the jury when he said to them : “You can not give any damage that did not flow directly from such wrongful action. That one boarder left on account of insufficient light, is no proof that others left for the same reason. Nor does it follow that they would have remained, even- if the gas had not been removed. They might have become dissatisfied with the landlady, and have left for that or some other reason ; ’ ’ and it' can not be believed that the jury, under the charge, and upon such evidence, had they been influenced by just and proper views of their duty, would have assessed the damages at the precise sum demanded in the complaint.
The judgment and order must be reversed, and a' new trial ordered. But as the error was of the jury, it must be on payment of costs of the trial.
Sedgwick and Speir, JJ., concurred.