J. H. METZ, ADMINISTRATOR, v. CITY OF ASHEVILLE.

(Filed 25 May, 1909.)

**Cities and Towns—Sewerage—Police Regulations—Governmental
Powers—Torts—No Liability.**

In establishing a free public sewer system for the benefit of its
citizens, for the use of which no charge is made, a city is exer-
cising a governmental function and is not responsible therein for
damages alleged to have been caused by fever communicated to
plaintiff's intestate by reason of the condition of a branch in
which one of the sewer pipes emptied.   (Cases in which the city
exercises a power conferred for private purposes distinguished by
BROWN, J.)

ACTION tried before *Peebles, J:*, and a jury, at March Term,
1908, of Buncombe, to recover damages for the negligent killing
of William Smith.

At the conclusion of the evidence the court intimated an
opinion that, upon the entire evidence, the defendant, as matter
of law, was not liable, and that he would so instruct the jury.

In deference to this intimation of opinion the plaintiff sub-
mitted to nonsuit and appealed.

*Charles E. Jones* for plaintiff. ·
*H. B. Carter* and *Davidson, Bourne & Parker* for defendant.

BROWN, J.   Plaintiff sues to recover damages for the death of his intestate, caused by typhoid fever communicated by the condition of Reed Branch, a small stream emptying into the French Broad River, and which ran near the house where said intestate resided.   The defendant, under its charter, maintained a free public sewerage system, the mouth of which emptied into Reed Branch, a short distance beyond the city limits, above the house where intestate resided.

It is admitted that, with full knowledge of the conditions necessarily caused by the constant discharge of the sewerage of the city into the branch, the intestate rented the house and moved into it, in February, 1905, and died, in August following, of typhoid fever, although his wife and children did not take it. There is evidence tending to show that the fever was caused by the sewerage in the branch.   It is contended that the sewer system should have emptied into the French Broad River, and that emptying it into Reed Branch created a nuisance, for which defendant is liable.

Whatever may have been held by some other courts, it is plain that under the previous decisions of this Court the opinion of his Honor is well founded.   The principle upon which our decisions have been based is clearly stated by the present *Chief Justice,* speaking for a unanimous Court, in *McIlhenny v. Wilmington,* 127 N. C., 146: "The law may, on a review of the authorities, which are uniform, be thus stated: When cities are acting in their corporate capacity or in the exercise of powers for their own advantage, they are liable for damages caused by the negligence or torts of their officers or agents; but where they are exercising the judicial, discretionary or legislative authority conferred by their charters, or are discharging the duty imposed solely for the public benefit, they are not liable for the torts or negligence of their officers, unless there is some statute which subjects them to liability therefor." *Moffitt v. Asheville,* 103 N. C., 237; *Pritchard v. Commissioners,* 126 N. C., 908; *Hill v. Commissioners,* 72 N. C., 55; *Coley v. Statesville,* 121 N. C., 316.

The same principles are recognized and set forth in an elaborate opinion by *Mr. Justice Walker,* in *Hull v. Roxboro,* 142 N. C., 453. See, also, *Peterson v. Wilmington,* 130 N. C., 77. The theory upon which municipalities are exempted from liability in cases like this is, that in establishing a free sewerage system for the public benefit it is exercising its police powers for the public good and is discharging a governmental function and, as expressed by the Supreme Court of Illinois, "It is a familiar rule of law, supported by a long line of well-considered cases, that a city in the performance of its police regulations cannot commit a wrong through its officers in such a way as to render it liable for a tort." *Craig v. Charleston,* 180 Ill., 154; Dillon Mun. Corp. (4th Ed.), sec. 975. The distinction between cases in which a power is conferred upon a municipality for private purposes and those where such power has relation to public purposes only, and of the liability or nonliability of the municipality therein, is thus aptly and clearly stated in 1 Smith's Modern Law of Municipal Corp., sec. 780: "When power conferred has relation to public purposes and for the public good, it is to be classified as governmental in its nature and appertains to the corporation in its political capacity. But when it relates to the accomplishment of private purposes in which the public is only indirectly concerned, it is private in its nature, and the municipality, in respect to its exercise, is regarded as a legal individual. In the former case the corporation is exempt from all liability, whether for nonuser or misuser; while in the latter case it may be held to that degree of responsibility which would attach to an ordinary corporation."

Recognizing this well-defined distinction in the liability of municipal corporations, it is held that where by statute it is made the duty of the city to remove garbage, it is a governmental function and the city is not liable for the manner of its discharge. *Davidson v. Mayor,* etc., 54 N. Y., sec. 51. So a city is held not to be liable for permitting its hydrants to become clogged, since the neglect is in the discharge of a public governmental function. *Miller v. Minneapolis,* 75 Minn., 131. Therefore, a city is not liable for damages of any sort arising from the negligence of its fire department. *Irvine v. Chattanooga,*

101 Tenn., 291. Nor in the performance of governmental duties generally. *Bartlett v. Clarksburg,* 45 W. Va., 393; *Snyder v. Lexington,* 20 Ky. L., 1562; *Love v. Atlanta,* 95 Ga., 129. Applying this same principle, the town of Greenville was exempted from liability for damages for illness caused by a foul condition of its public sewer, this Court holding that "Where a drain constructed by a municipal corporation through its negligence becomes choked with refuse and overflows the premises of a landowner, the corporation is liable only for damages to the property, not for bills of physicians, increase in expenses of his family, loss of time or mental anguish, the result of illness caused by the condition of the drain." *Williams v. Greenville,* 130 N. C., 93.

The reason of this distinction in regard to property seems to lie in the fact of ownership, vested rights, which no one can invade, not even the government, unless for public purposes, and then only by paying the owner for it. Where, in the discharge of its governmental functions and police powers, the officers of a municipality invade property rights, the doctrine of *respondeat superior* applies and the corporation is liable for their acts.

The identical question presented on this appeal was decided by the Court of Appeals of New York, in *Hughes v. Auburn,* 46 L. R. A., 636, where it is held: "(1) A city is not liable in damages for disease suffered by an individual in consequence of the neglect of the city authorities to observe proper sanitary precautions in the construction and maintenance of a sewer system. * * * (3) The statutory right of action for damages by reason of death caused by wrongful act, neglect or default, does not extend to an action against a city by the representatives of one who dies from disease superinduced by the neglect of sanitary precautions on the part of the public authorities in the construction or maintenance of a sewer system."

So it was held by the Massachusetts Court that where a private party sued a city for personal damages arising from the creation of a nuisance by the city upon his premises in constructing a sewer system with so narrow an outlet that the sewage was set back into plaintiff's cellar through a drain which he had constructed, by permission of the city, to connect with

the public sewer, the action could not be maintained. *Buckley v. New Bedford,* 155 Mass., 64. See, also, *Markey v. Queens County,* 39 L. R. A., 46; *Hughes v. Monroe,* 39 L. R. A., 3; *Kavanagh v. Barber,* 131 N. Y., 211.

The village of Keesville, as authorized by statute, maintained, by a public charge in the nature of taxation, a waterworks system which it used for the purpose of extinguishing fires. The Court of Appeals of New York held that the corporation was not liable for damages arising from the negligence of its agents in operating the waterworks at a fire. The court holds that it was an exercise of the police power of the village for the public benefit for the purpose of extinguishing fires, and remarks that "Cases have arisen, and may still arise, where an extensive conflagration might bankrupt the municipality, if it could be rendered liable for the damages or losses sustained." *Insurance Co. v. Keesville,* 148 N. Y., 46.

The distinction between the exercise of municipal corporate functions for the public benefit and those undertaken by such corporations for pecuniary profit is clearly recognized by *Mr. Justice Connor,* in *Fisher v. New Bern,* 140 N. C., 506, a case relied upon by plaintiffs. In that case it appeared that the city of New Bern, through a commissioner created by law, operated an electric-light plant for profit and furnished lights only to those who paid for them. From negligence in permitting a live wire to remain on the ground a person was killed. The Court held that operating an electric-light plant for profit for the benefit of those who paid for the service was not an exercise of police power, nor a governmental function, and that the city was liable for the negligence of its agents.

It must be admitted that the city of Asheville was exercising its police power when it established a free public sewer system, for the use of which no charge is made, for the benefit of its citizens. Certainly, nothing is more necessary to the health of a city than that its filth should be removed and its area well drained.

That the establishment of a public sewer system is an exercise of a governmental function is recognized by all the authorities I have quoted.

The serious consequences of holding a municipality liable for disease arising from nuisances of this kind is portrayed by the Court of Appeals of New York in an opinion of marked ability, in the case of *Hughes v. Auburn, supra:* "The right of the plaintiff to maintain this action depends upon the right of the deceased herself to maintain it had she survived the sickness resulting in her death, and this suggests the inquiry whether an individual who has suffered from disease superinduced by the neglect of the authorities of a city or village to observe sanitary laws in the construction or maintenance of a system of sewerage, can recover damages for the injury from the municipality. If one member of a family can, so can every member; and if one family may, so may every family, and every person who can give proof enough to carry the case to the jury. It matters not what the disease may be or the cause, so long as it may be traced by proof to some act or neglect on the part of the municipal authorities. There are few communities where places' or conditions may not be found that generate disease, and, if the municipality may be charged with the results traceable to these conditions, it is indeed subject to a liability more serious and far-reaching than has heretofore been recognized."

The judgment of the Superior Court is
Affirmed.