WATSON HINES v. CITY OF ROCKY MOUNT.

(Filed 28 May, 1913.)

1. Cities and Towns—Nuisance—Governmental Functions—Health —Repair of Streets.

Where a municipality, acting in accordance with the authority conferred by its charter, and for sanitary purposes, organizes, through its proper officers, and directs a general cleaning up of the town, and in thus acting attempts to fill up a large hole in an unimportant street, partly to get trash and rubbish out of the way, and partly for the better use of the street, and a suit is brought for damages against the city for the creation of a nuisance, alleging that garbage refuse, causing foul stench and odors, was thrown into this hole, causing sickness, etc., to the plaintiff and his family residing near: *Held*, the acts complained of were governmental in their character.

2. Cities and Towns—Nuisance — Governmental Functions — Damages to Property — Compensation — Damages — Constitutional Law.

The principle that a city may not be held liable in damages for its authorized acts of a governmental character which create a nuisance is subject to the limitation that neither a municipality nor other governmental agency is allowed to establish and maintain a nuisance, causing appreciable damage to a private owner, without liability to the extent of the damage done to his property ; for such is regarded and dealt with as a taking or appro-

priation of the property, to the extent of the damage thereto, and such an interference with the rights of ownership may not be made or authorized, except on compensation first made pursuant to law.

3. Cities and Towns—Nuisance—Governmental Functions — Injury to Health—Damages.

The principle upon which a recovery may be had of a municipality for damages arising from a nuisance caused by it in the exercise of a governmental function applying only to instances that amount to a taking of private property for a public use, the damages recoverable are restricted to the diminished value of the land, and does not include damages by reason of sickness, etc., caused by such nuisance to the owner or his family, considered as a direct element thereof.

4. Cities and Towns—Nuisance—Governmental Functions — Injury to Property—Character of Ownership—Nonsuit.

The damages for injury to real property for which a municipality is liable as the cause of a nuisance created by it in the exercise of its governmental functions is not confined to the ownership of the land, for at least nominal damages are recoverable if damages are caused to the proprietary rights of a plaintiff, whether owner or renter; and where the evidence tends to show the invasion of such rights by a municipality, thus acting, a judgment of nonsuit should be disallowed.

WALKER and ALLEN, JJ., dissenting.

APPEAL by defendant from *Daniels, J.,* at November Term, 1912, of EDGECOMBE.

Civil action to recover damages caused by alleged nuisance.

On the trial, it was made to appear that, in 1910, plaintiff and his family were occupying a house and lot in Rocky Mount, when the town authorities, professing to act under powers conferred by the charter, etc., and for sanitary purposes, etc., organized and directed a general cleaning up of the town; that plaintiff's house was built on a street which had been laid out by a land company, the street being through an old brickyard and in which there was a hole, 15 feet long by 12 feet wide and 2 or 3 feet in depth, and the agents and employees of the town, in carrying out the purpose, and acting under instructions, threw the trash, rubbish, etc., into this hole, partly to put the same out of the way and also with a view of filling the hole, that it might the better be used for the streets. The testi-

mony on part of plaintiff tended to show that, in filling this hole, the employees threw garbage, refuse, etc., and caused foul stench and odors, resulting in great annoyance and inconvenience to plaintiff and his family and rendering several of them sick with fever, causing outlay for expense, loss of time, etc.

There was evidence on part of defendant tending to show that no nuisance had been created and that there were other sources of infection on or near the premises entirely sufficient to account for the alleged sickness and much more likely to cause it.

On issues submitted, the jury rendered the following verdict:

1. Did the defendant maintain or cause to exist on Holly Street a public nuisance by reason of filling up the hole in front of plaintiff's house, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff damaged thereby? Answer: Yes.

3. If so, what damage did he sustain? Answer: $890.

Judgment on the verdict for plaintiff, and defendant excepted and appealed, assigning for error:

1. The refusal of the court to nonsuit plaintiff.

2. Allowing as a direct element of damages the sickness in plaintiff's family and costs incident to same, etc.

*J. W. Keel and W. O. Howard for plaintiff.*
*T. T. Thorne and L. V. Bassett for defendant.*

HOKE, J., after stating the case: The charter of the city of Rocky Mount, Private Laws 1907, ch. 209, sec. 21, provides, in general terms, that the board of aldermen shall have power to make proper regulations for the conservation of the public health, and may create and appoint a board of health to exercise and carry out such powers under the supervision and control of the first mentioned board. The acts complained of were chiefly in the exercise or attempted exercise of the powers there conferred, and should be considered governmental in character. *Insurance Co. v. Keeseville,* 148 N. Y., 46; *Love v. Atlanta,* 95 Ga., 129; 1 Abbott on Municipal Corporations, p. 304, sec. 147. This being the correct position, our decisions hold the

general rule to be, and they are in accord with well considered authority elsewhere, that "unless a right of action is given by statute, municipal corporations may not be held civilly liable. to individuals for failure to perform or neglect in performing duties governmental in their nature, including generally all duties existent or imposed upon them by law for the public benefit." *Harrington v. Greenville,* 159 N. C., 634, citing and referring, among other cases, to *Hull v. Roxboro,* 142 N. C., 453; *Peterson v. Wilmington,* 130 N. C., 76; *McIlhenny v. Wilmington,* 127 N. C., 146; *Moffitt v. Asheville,* 103 N. C., 237; see, also, *Hill v. Boston,* 122 Mass., 344; *Commonwealth v. Kidder,* 107 Mass., 88; Smith's Modern Law of Municipal Corporations, sec. 780.

This general principle is subject to the limitation that neither a municipal corporation nor other governmental agency is allowed to establish and maintain a nuisance, causing appreciable damage to the property of a private owner, without being liable for it. To the extent of the damage done to such property, it is regarded and dealt with as a taking or appropriation of the property, and it is well understood that such an interference with the rights of ownership may not be made or authorized except on compensation first made pursuant to the law of the land. *Little v. Lenoir,* 151 N. C., 415; *Nevins v. Peoria,* 41 Ill., 502; *Winchell v. Waukesha,* 110 Wis., 101; *Eaton v. R. R.,* 51 N. H., 504; *Bohan v. Port Jervis Co.,* 122 N. Y., 18; *Mining Co. v. Joplin,* 124 Mo., 129; *Fertilizer Co. v. Malone,* 73 Md., 268; *Wharf Co. v. Portland,* 67 Me., 46; *Village of Dwight v. Hayes,* 150 Ill., 273; *Langley v. Augusta,* 118 Ga., 590; 3 Abbott Municipal Corporations, sec. 961; 1 Lewis Eminent Domain (3d Ed.), sec. 65.

In affording redress for wrongs of this character, injuries caused by a nuisance wrongfully created in the exercise of governmental functions, our decisions hold as the correct deduction from the above principle that the damages are confined to the diminished value of the property affected, and that sickness attributable to such nuisance may not be properly considered as a direct element of damage (*Metz v. Asheville,* 150 N. C., 748; *Williams v. Greenville,* 130 N. C., 93); a position which finds

support in decisions of other courts of recognized authority. *Hughes v. Auburn,* 161 N. Y., 96; *Folk v. Milwaukee,* 108 Wis., 359. The evidence, or some of it, may be relevant on the question of the diminished value of the property, and might, in given instances, present a case for injunctive relief, but may not be made the basis for a direct estimate and award of uncertain and unrestrained damages. Speaking to some of the underlying reasons for the position, *O'Brien, J.,* delivering the opinion in the *Hughes case,* among other things, said: "If an individual, injured by disease produced by the acts or neglect of a city, such as are stated in the complaint, can recover damages at all, it must be upon some principle of the common law; and had it been suggested half a century ago that such a principle existed, the assertion would have been received with some surprise. In the form in which this case comes here, there is ample room to urge in argument elements of individual hardship well calculated to disturb the mind and divert it from the questions of law that underlie the action. On the principle that there can be no wrong without a remedy, courts are sometimes astute to discover grounds for relief in cases of this character, that, when applied as general principles to like cases, are found to be exceedingly inconvenient, if not untenable, and, hence, very frequently have to be distinguished, modified, or entirely abandoned. The principle upon which the judgment in this case rests is that an individual who has suffered from disease, caused by the neglect of a city to observe sanitary laws with reference to its sewer system, may recover damages from the city. This principle, if sanctioned and applied generally to all cases coming within its scope, cannot fail to produce evils much more intolerable than any that can possibly arise from such acts of omission or commission as the plaintiff states as the basis of this action. It must necessarily become the prolific parent of a vast mass of litigation which the municipality can respond to only by taxation, imposed alike upon the innocent and the guilty." And further: "In the construction and maintenance of a sewer or drainage system, a municipal corporation exercises a part of the governmental powers of the State for the customary local convenience

and benefit of all the people, and in the exercise of these discretionary functions the municipality cannot be required to respond in damages to individuals for injury to health, resulting either from omissions to act or the mode of exercising the power conferred on it for public purposes to be used at discretion for the public good. I have attempted to state some of the reasons that underlie this principle and their application to this case, with the evil results that must follow any departure from it."

Applying the doctrine as it obtains with us, we must hold that there was error in allowing the jury to consider the testimony as to sickness of various members of the plaintiff's family as a direct element in estimating the damages. The motion to nonsuit was properly overruled, because there were facts in evidence tending to show the existence of an actionable nuisance, causing damage to the proprietary rights of the plaintiff and entitling him in any event to a recovery for nominal damages. It does not appear what was the nature of plaintiff's tenure, whether as owner or otherwise, but, whether as owner or renter, he is entitled to recover for wrongful injury, causing damage to his proprietary rights. *Smith v. Sedalia,* 182 Mo., 1; *Grantham v. Gibson,* 41 Wash., 125.

The case of *Downs v. High Point,* 115 N. C., 182, chiefly concerned the framing and sufficiency of the issues, and the mind of the court was not directly addressed to the question presented here. To the extent, however, that the *Downs* case sanctions the principle that damages for specific cases of sickness can be recovered at the suit of an individual citizen by reason of an injury occurring from the exercise of governmental functions, the case has been disapproved both in *Metz v. Asheville, supra,* and *Williams v. Greenville, supra,* and is no longer authoritative on that position.

And the cases of *Durham v. Cotton Mills,* 141 N. C., 615, and *Vicker v. Durham,* 132 N. C., 880, are addressed to the position of restraining the discharge of sewage by reason of apprehended injury, and the amount of damages for injuries committed and the proper rules which should prevail on such an issue were not directly presented or determined.

For the error indicated, defendant is entitled to a new trial, and it is so ordered.

New trial.

WALKER, J., dissenting: While I agree with the majority of the Court that the defendant is liable for damage to the property of plaintiff, it is my opinion that it is also responsible for sickness caused by its tortious act. It may be that the cases supporting the opposite view, which is now taken by this Court, may be numerically larger than those favoring my position, though I have not counted them, but I do not think it can safely be said that the weight of authority or the greater force of reasoning is on that side. It is held in numerous well considered decisions that a city is not absolved, even as a governmental agency, from liability for a nuisance caused in repairing or cleaning streets by dumping unhealthy refuse or rubbish near a plaintiff's house, on the theory that street cleaning is a duty and a public benefit in which the plaintiff shared, and even a prompt abatement by the city of the nuisance does not prevent a recovery for damages arising during its continuance. *Haag v. Vanderburg County,* 60 Ind., 511; *New Albany v. Slider,* 21 Ind. App., 392. In 28 Cyc., p. 1293, and note 42, *et seq.,* will be found many cases sustaining the principle upon which the proposition just stated rests, and which also supports this text, under the title, "Nuisance created or permitted by corporation." "If in the exercise of its corporate powers a municipal corporation creates or permits a nuisance by nonfeasance or misfeasance, it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable to damages in a civil action to any person suffering special injury therefrom. So a municipal corporation has no more right to erect and maintain a nuisance on its own land than a private individual would have to maintain such a nuisance on his land; it is entitled to exercise the same rights in respect to the use of its property as an individual, and any lawful use thereof, or the doing of those things which the law authorizes, cannot, it is held, amount to a nuisance in itself, although the execution of the power may be in such a manner as to result in an action-

able nuisance." The cases thus collected were decided by ·courts entitled to the highest respect and the greatest consideration, because of their admitted ability and learning. The case of *Downs v. High Point,* 115 N. C., 182, is cited in the note to 28 Cyc., p. 1293, as sustaining the doctrine, and ·we think it does. It is said that the only question presented there related to the framing of the issues, but I think not. The judge charged the jury as follows: "The plaintiff alleges that his special damage consists in the fact that proximity to alleged nuisances caused illness of a serious nature to himself and family, much expense on account of such illness, and that the other parts of his neighborhood were not so affected. If this be true, it is special damage within the meaning of the law," and in that immediate connection, the Court, in its opinion by *Justice Avery,* said: "We think there was no error in refusing to instruct the jury upon the evidence that plaintiff could not recover. The instruction given was warranted by the evidence, and embodied the principle laid down by leading text-writers. Wood on Nuisances, secs. 561-574."

I do not think that *Asbury v. Albemarle* and *Sewerage Co. v. Monroe* have any direct bearing or decisive effect upon the question. The decisions in those cases may well ·be sustained upon grounds and for reasons not applicable to this case, and the same may be said of the cases cited in the opinion of the Court, such as *Hull v. Roxboro,* 142 N. C., 453; *Peterson v. Wilmington,* 150 N. C., 76; *Metz v. Asheville,* 150 N. C., 748.

It is said in 2 Wood on Nuisances (3d Ed.), sec. 561, p. 756, that "the right to have the air float over one's premises free from·all unnatural or artificial impurities is a right as absolute as the right to the soil itself." We have held in *Fitzgerald v. Concord,* 140 N. C., 110; *Brewster v. Elizabeth City,* 142 N. C., 11; *Kinsey v. Kinston,* 145 N. C., 108; *Revis v. Raleigh,* 150 N. C., 352, and quite recently in *Bailey v. Winston,* 157 N. C., 252, and *Smith v. Winston, ante,* 50, that a municipality is under a positive duty to keep its streets in reasonably passable condition, and for any defects thereon, due to the neglect of its corporate duty or to its negligence, it is liable in damages to persons injured thereby. Where it permits an

excavation or hole in the street to remain open and unguarded, after notice of its existence, it has been held liable to a person falling therein and breaking his limb, with consequent injury to his health. I can perceive no substantial difference in law, or in fact, between an injury to health caused by digging a hole and the same general kind of injury caused by filling it up. The ground of action is the wrong to the citizen in the enjoyment of his health and property. It can make little or no difference to him whether his health is wrecked as the result of falling in a hole or by inhaling noxious odors and contaminated air thrown off from rubbish or refuse deposited in the hole for the purpose of closing it, and there can be no difference in principle between the two cases.

It is argued that it would produce a multiplicity of suits, "or become the parent of a vast mass of litigation," if a city was held liable in such a case as this one, and that taxation to pay the judgments would be "imposed alike upon the innocent and guilty." The last reason would apply whether we hold the city liable for injury to health or only for injury to property, and the former would apply to a case for a defect in the streets by which numerous persons may be injured in body and health, or where there are numerous defects in streets causing like injury. The reasons are, therefore, inadequate to overthrow the common-law principle that "where there is a wrong, there is also a remedy." The duty of the municipality to keep its streets in good condition and proper repair is statutory. It is enjoined by the law, also, that it shall take such measures as are appropriate to prevent or abate nuisances and to preserve and safeguard the health of its citizens. The corporate authorities of a town are not only required to keep its streets in good condition and repair, but are indictable for not doing so. *S. v. Commissioners*, 6 N. C., 371, and are equally liable, civilly or criminally, for maintaining a nuisance upon its land within the corporate limits. 2 Wood on Nuisances, sec. 748, p. 1004.

In a well considered case it was held to be a "well recognized rule that municipal corporations are liable for torts in certain classes of cases, including nuisances, in the same manner as

162—27

natural persons." *Haag v. Commissioners,* 60 Ind., 511, citing several text-writers, among other authorities, and quoting this passage from 2 Addison on Torts (D. and R. Ed.), p. 1315: "A municipal corporation has no more right to maintain a nuisance than an individual would have, and for a nuisance maintained upon its property, the same liability attaches against a city as to an individual." In the *Haag case* defendant was charged with injuring the health of plaintiff's family, causing the death of her son by the erection of a pesthouse for the detention and treatment of smallpox patients. This elementary principle was applied in *Harper v. Milwaukee,* 30 Wis., 365, and thus stated: "The general rule of law is that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible, in any case in which, under like circumstances, an action could be maintained against an individual. *Pittsburgh v. Grier,* 22 Pa. St. R. (10 Harris), 54; *Brower v. New York,* 3 Barb., 254; *Young v. Leedom,* 67 Pa. St. R., 351; *Delmonico v. New York,* 1 Sandf., 222, are a few of the numerous cases which assert or recognize this principle." See, also, *Kolb v. Knoxville,* 111 Tenn., 311; *Stoddard v. Saratoga Springs,* 127 N. Y., 261; *Fort Worth v. Crawford,* 74 Texas, 404; *Clayton v. Henderson,* 103 Ky., 228; *Valparaiso v. Moffitt,* 12 Ind. App., 250.

I may remark here that not only does the case of *Harper v. Milwaukee, supra,* decide the very question before us, but it has been expressly recognized and approved by this Court as stating the law correctly in *Jones v. North Wilkesboro,* 150 N. C., 646. *Justice Connor* says in that case: "It is manifest that a municipal corporation has no legal right to establish and maintain a condition which creates a public nuisance, *per se*—that is, a condition which seriously endangers the health and lives of the people. *Harper v. Milwaukee,* 30 Wis., 365." A municipal corporation is not exempt from responsibility when the injury is accomplished by a corporate act which is in the nature of a trespass upon the rights of another, and it cannot, by any means or in any manner, create with impunity a public

or private nuisance, nor has it any more immunity from legal liability for causing or maintaining the same than an individual has under the law. *Nooman v. Albany,* 79 N. Y., 470; *Seifert v. Brooklyn,* 101 N. Y., 136. The Court said in the case last cited, at p. 142, that, "Municipal corporations have quite invariably been held liable for damages occasioned by acts, resulting in the creation of public or private nuisances, or for an unlawful entry upon the premises of another, whereby injury to his property has been occasioned." And again, at p. 144, speaking more directly to the question here involved, the Court said in that case: "The immunity which extends to the consequences, following the exercise of judicial or discretionary power, by a municipal body or other functionary, presupposes that such consequences are lawful in their character, and that the act performed might in some manner be lawfully authorized. When such power can be exercised so as not to create a nuisance, and does not require the appropriation of private property to effectuate it, the power to make such an appropriation or create such nuisance will not be inferred from the grant." It was further decided in that case, with reference to the liability of the corporation for an act done under authority of its charter: "The rule that a municipal corporation acting under the authority of a statute cannot be subjected to a liability for damages arising from the exercise by it of the authority so conferred, is confined to such consequences as are the necessary and usual result of the proper exercise of the authority. It does not shield the corporation where injury results solely from the defective manner in which the authority was originally exercised and from continuance in wrong after notice of the injury." These principles are also approved in *Bolton v. New Rochelle,* 32 N. Y. Sup., 442. There is a distinction made in *Seifert's case* between the judicial and ministerial duties of a municipal corporation with reference to its streets, which it will be well to state here in the words of that Court: "It was held (in *Hines v. Lockport,* 50 N. Y., 236) that the duty resting upon the corporation of building, opening, and grading streets, sidewalks, sewers, etc., was judicial, but that after they were constructed the duty of keeping them

in repair was ministerial, and from an omission to perform
that duty liability arose." This harmonizes with our decisions
upon the subject. We hold such corporations liable for in-
juries from defects in their streets, as we have already seen,
whether the defect causes a broken limb or produces broken
and shattered health directly, or as a consequence of some pre-
ceding injury to the body or limbs. It is a very shadowy dis-
tinction to make between an injury to the body and one to the
health. ·I do not think that it can properly be said that in
placing rubbish or other noxious or deleterious substances in a
street, even to fill a hole, is the exercise of a judicial duty or
a governmental function. These ideas find strong support in
what is said by a recent text-writer; not only in regard to the
right of a person who incurs special damage from a tort to sue,
but to recover, in such a case, against a municipal corporation
when he has sustained injury to his health. "While municipal
corporations have no more right than a private person to create
or maintain a common nuisance, nevertheless, so long as the
injury suffered by each individual is the same in kind as that
suffered by every other individual in the community or section
of the community affected by such a nuisance, none of them
can maintain a private action against the corporate body. The
only remedy available in such a case is by indictment. But ·if,
even though the nuisance be a public one, a person can show
that he has suffered therefrom some special and peculiar dam-
age, differing in kind from that suffered by him in common
with the rest of the community, he is entitled to recover in a
civil action compensation therefor from the municipality that
created or maintained such nuisance. Speaking generally,
municipal corporations stand, in regard to the creation and
maintenance of private nuisances, on substantially the same
footing as private corporations and natural persons. Their
rights are no greater; their civil responsibility is generally no
less. As a rule, therefore, they are liable in a private action
to any individual who suffers damage by reason of a private
nuisance created and continued by them." Williams on Munici-
pal Liability for Torts, pp. 305, 306. He supports his text by
the citation of many cases, to a few of which I will refer

specially, and to some striking passages showing the ground and extent of the decision. "These and other facts well warranted the conclusion of the trial court that the act of the defendant, in thus emptying its sewers, constituted an offensive and dangerous nuisance. Moreover, the plaintiff is found to have sustained a special injury to his health and property from the same cause, and we find no reason to doubt that he is entitled, not only to compensation for damages thereby occasioned, but also to such a judgment as will prevent the further perpetration of the wrong complained of. *Goldsmid v. Commissioners,* 1 Eq. Cas., 161; 1 Ch. App. Cas., 348." *Chapman v. Rochester,* 110 N. Y., 273.

My neighbor has no right to excavate his soil in such a manner as to create a stagnant and offensive pond, so near my premises as to be a private nuisance by rendering my house unhealthy. He cannot use his property for a purpose that will prevent the enjoyment of mine. 3 Blackst. Com., 217. The same law that protects my right of property against invasion by private individuals must protect it from similar aggression on the part of municipal corporations. A city may elevate or depress its streets, as it thinks proper, but if in so doing it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, upon what ground of reason can it be insisted that the city should be excused from paying for the injuries it has directly wrought? *Nevins v. Peoria,* 41 Ill., 502. It was held in *Jacksonville v. Doan,* 145 Ill., 23, that the city should not be excused from paying for injuries to health which it has directly wrought and which proceeded from a pond of stagnant water, caused by negligence in improving its streets. The case refers, with approval, to *Nevins v. Peoria, supra,* and cites other strong authorities.

It is against natural justice to allow the creation of a dangerous nuisance by a city, affecting the health of a citizen, and then hold the corporation immune from damages. There lurks in this principle of exemption the danger of arbitrary power, which may be oppressively exercised over the helpless and de-

fenseless citizen. As well at once declare that no one can acquire any rights to his home which the municipal corporation is bound to respect, for if he cannot live in it with comfort to himself and family, of what value is it to him? Can the corporation drive him from it by foul and offensive odors and a poisoned atmosphere, and then restrict him to mere property damage? There is something more valuable to him, but for which the law, as now declared, allows him nothing. The power of a corporation should be regarded as subject to the just limitation that it is forbidden to be exercised in such manner as to create nuisances injurious to private rights, health as well as property, especially where such a consequence is not a necessary result of properly exerting its power, and this I believe to be the common law of this country. *Edmondson v. Moberly,* 98 Mo., 523; *Hannibal v. Richards,* 82 *ibid.,* 330.

The charter of this corporation (Laws 1907, ch. 209, sec. 39) confers upon it the power to abate nuisances, not to create them, and requires the corporation to provide for the proper maintenance, repair, and regulation of the streets. It certainly cannot be argued from these provisions that the unnecessary creation of a nuisance is a legitimate exercise of any function of government possessed by the corporation. If it is negligent in the performance of its ministerial duties, such as repairing its streets, and injury results to others of whatsoever kind, we have held repeatedly that it commits a legal wrong, for which it must respond in damages.

ALLEN, J., dissenting: The case of *Asbury v. Albemarle,* decided at this term, and the one now being considered, illustrate the difficulty of marking the line between the ministerial duties of a municipal corporation, in the performance of which it acts as a private corporation, and its governmental powers.

In the *Albemarle case* the Court said: "It is well settled that local conveniences, and public utilities, like water and lights, are not provided by municipal corporations in their political or governmental capacity, but in that *quasi*-private capacity in which they act for the benefit of their citizens exclusively," and upon this principle held an act of the Legisla-

ture unconstitutional because it interfered with the discretion of the municipal corporation in the establishment of a system of waterworks, this being done in its private capacity; while in this case it is held that throwing garbage in a hole in the street is governmental.

I do not agree to the decision in either case. I think the act in the *Albemarle case* constitutional, and that it is just and wise, as it simply requires a municipal corporation, when it has induced another corporation to establish a private system of waterworks within its limits, to buy or condemn such system, paying only what it is worth, before it constructs a system of its own, and thereby confiscates property, devoted to a use within the corporation by its consent.

In the present case the Court admits that the defendant is liable, but restricts the recovery to damages to property, and denies the right to recover for sickness of the plaintiff or his family, or for expenses incurred in restoring them to health.

I admit that there is authority in favor of the opinion of the Court, but to my mind no good reason has been shown for the distinction, or for departing from the principle, well-nigh universal, that one who does a wrong is liable for all the damages caused naturally and proximately thereby.

The rule adopted by the Court is, as it appears to me, illogical, and has been arbitrarily established, because of the fear that if recoveries are allowed for sickness, municipal corporations may become bankrupt, and also because of the growing tendency to sacrifice the rights of the individual to some idea of public policy.

We are warned that "public policy is a dangerous guide in the discussion of a legal proposition," and that those who follow it far are apt "to bring back the means of error and delusion"; but if it should be considered at all, I think it wiser and better for a loss to be distributed among all the citizens of a municipality than to leave it, where the municipality has placed it, on the shoulders of one man, and that the best public policy includes justice to the individual.

I cannot believe it is in accordance with law or justice that a municipal corporation may throw garbage, sewage, etc., on

the land of a citizen, against his will, and bring death and sickness to his wife and children, and that the citizen may recover damages for injury to his land, but can recover nothing for injury to his wife and children.