PLANT FOOD COMPANY, A CORPORATION, v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION.

(Filed 30 November, 1938.)

1. **Municipal Corporations § 19b—City may contract in regard to detail of administration of governmental power involving no governmental discretion.**

While the governing body of a city may not make a contract binding itself or its successor with respect to the exercise of governmental discretion, it may bind itself with respect to proprietary affairs by contract running for a term of years, the distinction being not whether the contract relates to a governmental or proprietary power, but whether in fact the contract deprives the governing body or its successor of a discretion which public policy demands should be left unimpaired, and therefore a city may contract for a period of years in regard to a detail of administration of a governmental power which does not involve the exercise of governmental discretion.

2. **Same—City may contract for a term of years for removal of sludge from its sewerage disposal plant.**

This action was instituted by plaintiff for breach of a contract by defendant municipality under which plaintiff agreed to remove sludge from the city's sewerage disposal plant and pay the city a stipulated amount per ton removed. The city demurred on the ground that it appeared from the complaint that the contract was executed by the city's previous governing body, and that the contract related to a governmental function of the city and therefore the contract was void as an attempt to bind the city and the successor governing body in regard to a discretionary governmental power. *Held:* The contract related to a detail of administration of a governmental function involving no governmental discretion, but only a business power or business discretion, and the power to make such contract is a necessary incident to the proper administration of the city government, and the demurrer was properly overruled.

3. **Same—**

Under the contract in question it was agreed that plaintiff should remove sludge from the city's sewerage disposal plant and pay a stipulated sum per ton removed. *Held:* The contract related primarily to a service and not a sale of the sludge, and did not involve a sale of city property within the meaning of C. S., 2688, requiring sale of city property to be made by auction.

APPEAL by plaintiff from *Cowper, Special Judge,* at September Term, 1938, of MECKLENBURG. Reversed.

The plaintiff alleged in its complaint that it had made a contract with the city of Charlotte covering a period of ten years, under which the city agreed at its own expense to deliver the sludge from its Sugaw Creek disposal plant upon properly constructed and maintained drying beds, to be provided and maintained at the expense of the city; and plaintiff agreed to remove the sludge from the drying beds after it had been conditioned, as specified in the contract, and to pay the city therefor, according to the tonnage in a stated schedule; and that the plaintiff had gone to great expense to put itself in position to carry out its part of the contract. It is alleged that the defendant municipality, without cause, breached its contract with plaintiff in certain particulars set out in the complaint, to the great damage of the plaintiff, which demands damages therefor.

The defendant demurred to the complaint upon the ground that the contract had been entered into by one city administration and a subsequent administration is being sued for its breach, and the contract made with plaintiff, as a matter of law, would not be binding upon the subsequent administration of the city of Charlotte.

Upon the hearing, the demurrer was sustained and plaintiff appealed.

*Cochran & McCleneghan and James L. DeLaney for plaintiff, appellant.*
*J. M. Scarborough and B. M. Boyd for defendant, appellee.*

SEAWELL, J. The defendant contends that the contract before us for consideration involves those discretionary powers of the municipal board which must be kept free at all times, to be exercised in the public interest; and since the powers concerned are of that character, they cannot be delegated, suspended, or embarrassed by contract, which would have a binding force upon succeeding boards. The plaintiff contends that the contract involves only the proprietary or business powers of the municipal corporation, and that the service involved is a legitimate subject of contract which might extend over a period of years. We doubt, however, whether a simple classification of that sort is sufficient to determine the question at issue, since there are enough anomalies presented in either case to make it an inaccurate test of the power to make the contract.

It is true, as a rule, that where governmental discretionary powers are involved a board can make no contract which would bind its successors in office with respect to the exercise of the discretion. Amongst the powers generally conceded to be accompanied by such governmental

discretion, and which cannot be suspended or controlled by contract, are usually classed the legislative powers of the governing body—the power to make ordinances and decide upon public questions of a purely governmental character (and under this head must be classed most of the strictly governmental discretionary powers, since the body acts as a whole and usually by ordinance or resolution); the power to lay out and maintain streets, to build bridges and viaducts over which they lead, preserve civil order; to regulate rates (where power to do so is given in the charter); to levy taxes, make assessments, and the like. These are mentioned simply by way of illustration and only roughly indicate the quality of the power we are discussing. "A public function is one which is exercised by virtue of certain attributes of sovereignty delegated to a city for the health and protection of its inhabitants, or the public." *McLeod v. Duluth,* 174 Minn., 184, 218 N. W., 892.

Where governmental powers of this kind are not involved or disadvantageously affected the right to make contracts, otherwise unobjectionable to the law, is one of the most important incidents of municipal government. *Lambeth v. Thomasville,* 179 N. C., 452, 102 S. E., 775. In the administration of its proprietary affairs the commissioners or councilmen of the town may make reasonable contracts binding upon their successors running through a term of years.

The line between powers classified as governmental and those classified as proprietary is none too sharply drawn, and is subject to a change of front as society advances and conceptions of the functions of government are modified under its insistent demands. And it may be said that with respect to the making of contracts the inhibition does not strictly apply where governmental discretion as to the performance of the particular act is no longer necessary.

It is not to be supposed that because the general subject may belong to the field of governmental powers no detail of administration may be carried out by contract, or that such contract must be completed within the term of the contracting council. The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left·unimpaired. It is obvious that a too rigid adherence to the principle would leave the town council nursing a mere theory, in the possession of an important governmental power without practical means for its exercise, and unable to undertake any important public work, since no concern would equip itself and undertake the project when the incoming administration, the product perhaps of political accident, might repudiate the contract at will during its performance.

We think the principle is subject to a further relaxation. Many details in an enterprise undertaken originally under governmental power

have been held to be subjects of valid contracts, binding upon the successors to the contracting body, on the principle that they have become matters of business power or business discretion. Thus, a contract to keep a street in repair, running for ten years, was not considered offensive to the rule, although the laying out of the street belongs generally to the governmental discretionary power. *Barbour Asphalt Co. v. Louisville,* 123 Ky., 687, 97 S. W., 31. We may be permitted to make the parenthetical observation here that while under our law the laying out and grading of streets belongs to the exercise of a governmental function, the town is, nevertheless, liable for injury sustained through negligence in keeping the sidewalks in repair. *Pickett v. R. R.,* 200 N. C., 750, 158 S. E., 398.

Our attention is called to the case of *Metz v. Asheville,* 150 N. C., 748, 64 S. E., 881, in which recovery was denied for injury and death sustained through pollution of the waters by reason of negligence in the operation of a sewerage plant, on the ground that the commissioners of the town, in the construction and operation of the sewerage plant, were in the performance of a purely governmental function. Under the general powers given to towns and cities to construct and operate sewerage systems, we doubt whether it is necessary to invoke the police power to sustain such authority, and it is difficult to reconcile *Metz v. Asheville, supra,* with *Moser v. Burlington,* 162 N. C., 141, 78 S. W., 74 (compare *Asbury v. Albemarle,* 162 N. C., 247); although we do not attempt to disturb the classification there given. We do, however, express the opinion that cases dealing solely with the liability of municipal corporations for negligence of its servants or agents do not run parallel with cases involving the power to contract, and their application may become misleading.

We think the purposes of this particular contract must determine its validity, rather than the history incidental to the enterprise and the fact that material for the removal of which the city contracted is the so-called "sludge," or product of treatment through the city sewerage. It is there a nuisance or potential nuisance, and its removal falls within the category of similar subjects of contract which have often been sustained by the courts. Such a contract for the removal of garbage is sustained in *Balch v. Utica,* 59 N. Y. S., 513, 168 N. Y., 651, 61 N. E., 1127; see *Roberts v. Gutberlett,* 211 N. Y., 309, 105 N. E., 548. Removal of dead animals: *Louisville v. Wible,* 84 Ky., 290, 1 S. W., 605. See *McBean v. Fresno,* 112 Cal., 159, 44 P., 358; *California Reduction Co. v. Sanitary Reduction Works,* 199 U. S., 306.

We cannot see that any governmental discretionary power of the city was compromised in the making of this contract, and we are of the opinion that it cannot be arbitrarily or capriciously abandoned during its term.

2. The defendant contends that the contract involves a sale of city property which could not be made except by auction, under C. S., 2688. To apply this law to the present case on the theory advanced by the defendant it would be necessary to have an auction for the sale of sludge as it accumulated in sufficient quantities. The product does not appear to be a saleable commodity except as something may be realized from it in the process of removal. In the contract between these parties the removal of the sludge is the prevailing consideration and is sufficiently predominant to characterize the contract as one of service, not of sale. Payment to the defendant was an incidental saving.

For these reasons, we think the complaint states a cause of action and the judgment sustaining the demurrer is

Reversed.