BOSTIC PACKAGING, INC. AND SHELBY INSURANCE CO., PLAINTIFFS V. CITY OF
MONROE (A MUNICIPAL CORPORATION), DEFENDANT

No. COA01-39

(Filed 16 April 2002)

**1. Immunity— city sewer system—proprietary function**

Defendant-city was not immune from tort liability in the oper-
ation and maintenance of its sewer system where plaintiffs
alleged specifically that defendant set rates and charged fees for
the maintenance of sewer lines and the reasoning of *Pulliam v.
City of Greensboro*, 103 N.C. App. 748, was applicable.

**2. Cities and Towns— negligence—operation of sewer sys-
tem—issues of fact**

The trial court erred by granting summary judgment for
defendant-city in an action resulting from a sewage backup and
overflow in plaintiff's business where there were genuine issues
as to the cause of the sewage backup, as to whether defendant
was negligent in its operation of its sewage system, and as to
whether plaintiff was contributorily negligent in not installing a
backwater valve pursuant to the building ordinances.

Appeal by plaintiffs from order entered 30 October 2000 by Judge
Mark E. Klass in Union County Superior Court. Heard in the Court of
Appeals 7 November 2001.

*Crews & Klein, P.C., by Paul I. Klein and Katherine Freeman,
for plaintiff appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by Anthony T. Lathrop and
Jaye E. Bingham, for defendant appellee.*

TIMMONS-GOODSON, Judge.

Plaintiffs appeal from the order of the trial court granting sum-
mary judgment in favor of defendant. For the reasons stated herein,
we reverse the order of the trial court.

On 10 May 1999, Bostic Packaging, Inc. ("Bostic") filed a complaint against the City of Monroe ("defendant") in Union County Superior Court. The complaint alleged that Bostic operated a packaging material manufacturing facility located on Stitt Street in the City of Monroe, and that defendant operated and maintained the sewer lines that serviced Bostic's facility. According to the complaint, on or around 30 July 1997, defendant "negligently and carelessly failed to properly maintain and repair the sewer lines," causing sewage to back up and overflow into Bostic's facility. Shelby Insurance Company was later added as a necessary party to the lawsuit and joined Bostic as a party plaintiff (collectively, "plaintiffs"). In support of their complaint, plaintiffs presented the affidavit of engineer Carlton Burton, who indicated that defendant was negligent in the plan, design, and construction of the culverts, storm drains, and sewer lines serving Bostic's facility on Stitt Street.

Defendant filed an answer asserting, *inter alia*, the defense of governmental immunity. Alternatively, defendant asserted that plaintiffs were contributorily negligent in that they "[f]ailed to have backwater drains installed as required under the North Carolina State Plumbing Code." On 15 September 2000, defendant filed a motion for summary judgment, which the trial court granted. Plaintiffs appeal.

_____

Plaintiffs assign error to the trial court's order granting summary judgment in favor of defendant. Plaintiffs contend that the trial court erred when it concluded that the doctrine of governmental immunity applied to defendant's operation and maintenance of its sewer system. Plaintiffs further argue that they presented adequate evidence of defendant's negligence to withstand the motion for summary judgment, and that the trial court erred in concluding that plaintiffs were contributorily negligent as a matter of law. For the reasons stated herein, we reverse the order of the trial court.

## I. Governmental Immunity

[1] As a general rule, the doctrine of governmental immunity shields a municipality from liability for torts committed by its agencies and organizations. *See Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461, *disc. review denied*, 352 N.C. 673, 545 S.E.2d 423 (2000). Application of the doctrine depends upon whether the activity out of which the tort arises is properly characterized as "governmental" or "proprietary" in

nature. *Schmidt v. Breeden*, 134 N.C. App. 248, 252, 517 S.E.2d 171, 174 (1999). Specifically, "[t]he doctrine applies when the entity is being sued for the performance of a governmental function . . . . [b]ut it does not apply when the entity is performing a ministerial or proprietary function." *Herring*, 137 N.C. App. at 683, 529 S.E.2d at 461 (citation omitted). Application of the governmental versus proprietary distinction to given factual situations has resulted in "splits of authority and confusion as to what functions are governmental and what functions are proprietary." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 528, 186 S.E.2d 897, 907 (1972).

Our Supreme Court has articulated the following test for determining whether an activity falls within the governmental or proprietary function of a municipality:

> When a municipality is acting "in behalf of the State" in promoting or protecting the health, safety, security, or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers. In either event it must be for a public purpose or public use.

> So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and "private" when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security or general welfare of the residents of the municipality.

*Britt v. Wilmington*, 236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952). When applying the foregoing test, our courts have focused upon the "commercial aspect of the definition." *Hickman v. Fuqua*, 108 N.C. App. 80, 83, 422 S.E.2d 449, 451 (1992), *disc. review denied*, 333 N.C. 462, 427 S.E.2d 621 (1993). Although a "profit motive" is not dispositive in determining whether an activity is governmental or proprietary in nature, *see Schmidt*, 134 N.C. App. at 253, 517 S.E.2d at 175, "[c]harging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary." *Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 235, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

Plaintiffs maintain that defendant does not enjoy governmental immunity because the operation and maintenance of a sewer system is a proprietary function. Prior holdings of this Court reveal an apparent conflict in determining whether the operation and maintenance of a sewer system is a governmental or proprietary function.

In *Roach v. City of Lenoir*, 44 N.C. App. 608, 261 S.E.2d 299 (1980), residents of Lenoir brought suit against the city seeking to recover for property damage allegedly caused by the city's negligence in the maintenance and operation of its sewer system. The trial court granted summary judgment in favor of the defendant. On appeal, this Court held that the defendant was entitled to governmental immunity, but reversed the trial court on the issue of whether the defendant had waived such immunity. The Court stated that the "establishment and construction of a sewer system by a municipality are governmental functions entitling it to immunity from negligence." *Id.* at 610, 261 S.E.2d at 300-01. The *Roach* Court based its reasoning on *Metz v. Asheville*, 150 N.C. 748, 64 S.E. 881 (1909), where our Supreme Court stated that, "[t]he theory upon which municipalities are exempted from liability in cases like this is, that in establishing a free sewerage system for the public benefit it is exercising its police powers for the public good and is discharging a governmental function." *Metz*, 150 N.C. at 750, 64 S.E. at 882. The *Roach* Court therefore concluded that "the City of Lenoir, while performing a governmental function in the maintenance of a sewer system within its municipal jurisdiction, may not be held liable for any damage arising out of the governmental activity unless it expressly waives its immunity." *Roach*, 44 N.C. App. at 610, 261 S.E.2d at 301.

In a more recent decision, however, this Court held that a municipality is "not immune from tort liability in the operation of its sewer system." *Pulliam v. City of Greensboro*, 103 N.C. App. 748, 754, 407 S.E.2d 567, 570, *disc. review denied*, 330 N.C. 197, 412 S.E.2d 59 (1991). In *Pulliam*, the plaintiffs were homeowners who brought suit against the city of Greensboro for its allegedly negligent maintenance, operation and repair of the sewer lines serving plaintiffs' residence. The sewer lines at issue were "subject to [the] defendant's rates and charges." *Id.* at 749, 407 S.E.2d at 567. The plaintiffs alleged that they suffered considerable damage when raw sewage backed up and overflowed into their residence. The defendant moved for summary judgment on the grounds of governmental immunity and contributory negligence, which motion the trial court granted.

In reversing the trial court, this Court noted that the legislature had "extensively revised and rewr[itten] the statutory law relating to cities and towns in North Carolina[,]" adopting a new article entitled "Public Enterprises." *Id.* at 752, 407 S.E.2d at 569 (quoting N.C. Gen. Stat. § 160A-311 (1987)). The statutory revisions allowed municipalities to fix and enforce rates for sewer systems and authorized the granting of franchises for the operation of public enterprises. The Court recognized that "an interesting pattern of public enterprise activity has emerged[,]" resulting in "an accepted practice in North Carolina for cities and towns to compete with private enterprise by the ownership and operation of these public enterprises recognized by the General Assembly." *Id.* at 753, 407 S.E.2d at 569. Because "our courts have clearly stated that in setting rates for public enterprise services, municipalities act in a proprietary role[,]" the *Pulliam* Court determined that the operation of the defendant's sewer system, for which it charged rates, was a proprietary function. *Id.* at 753, 407 S.E.2d at 569-70. Further noting the "modern tendency to restrict the application of governmental immunity[,]" the Court concluded that the defendant was not protected by governmental immunity and was therefore "answerable to these plaintiffs for any negligent act which may have caused them injury and damage." *Id.* at 754, 407 S.E.2d at 570.

In reviewing *Roach* and *Pulliam*, we are persuaded in the instant case that the reasoning in *Pulliam* is applicable to the present defendant's operation and maintenance of its sewer system. Like the plaintiffs in *Pulliam*, plaintiffs here specifically alleged in their complaint that "Defendant set rates and charge[d] Plaintiff fees for the maintenance of said sewer lines." There is no mention in *Roach* of any payment for the services provided by the defendant in that case. Moreover, in determining that the operation of a sewer system is a governmental function, the *Roach* Court specifically relied upon the *Metz* decision, which only addressed the establishment of "a free sewerage system for the public benefit." *Metz*, 150 N.C. at 750, 64 S.E. at 882. Accordingly, we hold that defendant is not immune from tort liability in the operation and maintenance of its sewer system, and the trial court therefore erred in granting summary judgment to defendant on the basis of governmental immunity.

## II. Negligence

[2] In their next two assignments of error, plaintiffs contend that their forecast of evidence presented genuine issues of material fact precluding summary judgment. We agree.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). A summary judgment movant bears the burden of showing either that (1) an essential element of the plaintiff's claim is nonexistent; (2) the plaintiff cannot produce evidence to support an essential element of its claim; or that (3) the plaintiff cannot surmount an affirmative defense raised in bar of its claim. *See Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *reversed on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). In ruling on a motion for summary judgment, the evidence is viewed in the light most favorable to the non-movant.

In a negligence claim, summary judgment is proper where the plaintiff's forecast of evidence is insufficient to support an essential element of negligence. *See Patterson v. Pierce*, 115 N.C. App. 142, 143, 443 S.E.2d 770, 771, *disc. review denied*, 337 N.C. 803, 449 S.E.2d 749 (1994). To make out a *prima facie* case of negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury. *See Estate of Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 412, 497 S.E.2d 287, 289 (1998). Summary judgment is a drastic measure, and it should be used with caution, especially in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case. *See Williams v. Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979). "Like negligence, contributory negligence is rarely appropriate for summary judgment." *Ballenger v. Crowell*, 38 N.C. App. 50, 55, 247 S.E.2d 287, 291 (1978).

Viewing the evidence in the light most favorable to the non-movant, the evidence in the instant case highlights a genuine dispute as to the cause of the sewage backup and whether defendant was negligent in the operation and maintenance of the sewer system. Further, although defendant asserts that plaintiffs were contributorily negligent in their failure to install a backwater valve pursuant to North Carolina Building Code ordinances, the applicability of these ordinances does not absolve defendant of liability, but rather raises issues of (1) whether the facility in fact maintained a backwater valve; (2)

whether plaintiffs fall within the purview of the ordinances; and (3) whether the backwater valve would have prevented the damage or injury sustained. *See Pulliam*, 103 N.C. App. at 756, 407 S.E.2d at 571 (holding that the failure of plaintiffs to install a backflow valve "merely highlights [the] issue [of contributory negligence]; it does not settle it beyond question"). As genuine issues of material fact exist concerning defendant's negligence and plaintiffs' contributory negligence, the trial court erred in granting summary judgment to defendants.

For the reasons stated herein, we hold that the trial court erred in granting summary judgment in favor of defendants.

Reversed.

Judges HUDSON and JOHN concur.