An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-817
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014


ROBERT A. BELL and
JOAN A. BELL,
        Plaintiffs,

    v.                              Craven County
                                    No. 12 CVS 1410

CITY OF NEW BERN and
TOWN OF TRENT WOODS,
        Defendants.


    Appeal by defendant Town of Trent Woods from order entered

17 January 2013 by Judge Benjamin G. Alford in Craven County

Superior Court.  Heard in the Court of Appeals 11 December 2013.


        *Kirkman, Whitford, Brady, Berryman & Farias, P.A., by Neil
        B. Whitford and Jane A. Gordon, for plaintiffs-appellees.*

        *Teague, Campbell, Dennis & Gorham, L.L.P., by Bryan T.
        Simpson and Natalia K. Isenberg, for defendant-appellee,
        City of New Bern.*

        *Turrentine Law Firm, PLLC, by S. C. Kitchen, for defendant-
        appellant, Town of Trent Woods.*


        GEER, Judge.


    Defendant Town of Trent Woods appeals from an order denying

its motion to dismiss the claims of Robert A. Bell and Joan A.

Bell for inverse condemnation, negligence, nuisance, trespass,

and a permanent injunction, arising out of flooding damage allegedly caused by the construction of a sewer pump station on an intense watershed overflow lot and inadequate storm drain pipes. To the extent that Trent Woods argues on appeal that plaintiffs have failed to state a claim for relief, we dismiss the appeal as interlocutory and not affecting a substantial right.

With respect to Trent Woods' claim that it is entitled to governmental immunity, a review of plaintiffs' complaint establishes that the actions giving rise to plaintiffs' claims involve the negligent maintenance of Trent Woods' storm drainage system. Because it is well established that municipalities are not performing governmental acts when maintaining storm drains, governmental immunity does not apply, and the trial court properly denied the motion to dismiss based on governmental immunity.

## Facts

In 2002, defendant City of New Bern and Trent Woods entered into an agreement entitled "TRENT WOODS SEWER COLLECTION SYSTEM AGREEMENT" ("the 2002 Agreement"). Under the 2002 Agreement, New Bern agreed to finance the construction of a sewer system for the residents of Trent Woods with an installment loan, and Trent Woods agreed to reimburse New Bern. The system was to be

built pursuant to the plans of the Project Engineer, Rivers and Associates, Inc., and "with input and approval" from Trent Woods. Once construction was complete, New Bern would bill Trent Woods residents directly. In consideration for New Bern's sewer collection and treatment service, Trent Woods agreed to waive its right to receive $50,000.00 per year for eight years from New Bern as required by a previous agreement between New Bern and Trent Woods.

As part of the construction of the sewer system, New Bern purchased lots 4, 5, and 6 of the Greenside Subdivision in Trent Woods from G. Brant Cooper and Nancy E. Cooper for $150,000.00. New Bern purchased these lots subject to restrictive covenants in the lots' deed that the lots "shall be utilized as an intense watershed overflow and are currently not approved for development." Additionally, Trent Woods imposed conditions on the developer that "[n]o pipe shall be placed in main drainage ditch with a diameter less than 40" (inches)." As part of the purchase of the lots, New Bern agreed to install a 42-inch drainage tile which would run from the end of Greenside Court underneath Country Club Road to a canal.

In the fall of 2004, New Bern completed construction of a sewer pump station on lot 4 of the Greenside Subdivision, which it operates and maintains. In constructing the pump station,

New Bern increased the elevation of lot 4, brought in approximately 9,700 cubic feet of fill, and clear cut trees from the lot in violation of the restrictive covenants. By July 2010, New Bern had not fulfilled its obligation under the 2002 Agreement to install the 42-inch drainage pipe.

On 13 July 2010, Trent Woods entered into an agreement ("the 2010 Agreement") with New Bern that New Bern would transfer lots 5 and 6 to Trent Woods. As part of the consideration for the lots, Trent Woods released the City of New Bern from any requirement to improve or maintain drainage in the Greenside subdivision. Trent Woods further agreed to obtain easements for drainage and agreed to indemnify New Bern for liability arising out of any obligation regarding the construction of a storm drainage system as provided in the purchase contract from the developer. Trent Woods also agreed to release to New Bern the sum of $150,000.00, which was the amount held by Trent Woods as "retainage for the sewer project," as a final payment for the cost of the sewer system.

Plaintiffs own a house located in the Greenside Subdivision of Trent Woods, approximately 600 feet from the sewer pump station. On or about 28-30 September 2010, during heavy rains from Tropical Storm Nicole, plaintiffs' property was flooded, causing $50,000.00 in property damage. On or about 26-28 August

2011, plaintiffs' property was again flooded during Hurricane Irene, causing additional damages of $52,000.00. Prior to September 2010, plaintiffs' property had never flooded.

Plaintiffs filed suit against New Bern and Trent Woods on 26 September 2012 asserting claims for inverse condemnation, negligence, nuisance, trespass, and a permanent injunction. Trent Woods filed a Motion to Dismiss on 19 October 2012 with a supporting affidavit contending that Trent Woods did not have insurance to cover plaintiffs' claims and, therefore, was entitled to governmental immunity.

On 22 October 2012, plaintiffs filed their first amended complaint alleging a waiver of sovereign immunity. Trent Woods filed a second motion to dismiss on 14 November 2012 alleging sovereign immunity, lack of personal and subject matter jurisdiction, failure to state a claim, and failure to join a necessary party. The trial court denied Trent Woods' Motion to Dismiss in an order entered on 22 January 2013. Trent Woods appealed the 22 January 2013 order to this Court.

## Motion to Dismiss Appeal

We first address plaintiffs' motion to dismiss Trent Woods' appeal. Trent Woods' appeal of the trial court's order denying the motion to dismiss is interlocutory. "An interlocutory order is one made during the pendency of an action, which does not

dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950).

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an appeal from an interlocutory order is permissible "if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review." *Boyd v. Robeson Cnty.*, 169 N.C. App. 460, 464, 621 S.E.2d 1, 4 (2005). "[I]t is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal[.]" *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). The record here does not, of course, contain a Rule 54(b) certification, and therefore the burden is on Trent Woods, as the appellant, to show that the interlocutory order affected a substantial right that would be lost without immediate review.

Trent Woods moved to dismiss the claims for negligence, nuisance, trespass, and a permanent injunction based on the defense of governmental immunity. It is well established that

"'[t]he denial of a motion to dismiss based upon the defense of sovereign immunity affects a substantial right and is thus immediately appealable.'" *Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008) (quoting *RPR & Assocs. v. State*, 139 N.C. App. 525, 527, 534 S.E.2d 247, 250 (2000), *aff'd per curiam*, 353 N.C. 362, 543 S.E.2d 480 (2001)). Thus, denial of Trent Woods' motion to dismiss based on the defense of governmental immunity is properly before us.

Additionally, Trent Woods has sought immediate review of the denial of its motion to dismiss plaintiffs' inverse condemnation claim, which was not based on the defense of sovereign immunity. Chapter 40A of the North Carolina General Statutes governs the procedure for inverse condemnation actions, N.C. Gen. Stat. § 40A-51 (2013), and provides for a bifurcated process. First, under N.C. Gen. Stat. § 40A-47 (2013), the judge must "hear and determine any and all issues raised by the pleadings other than the issue of compensation, including, but not limited to, the condemnor's authority to take, questions of necessary and proper parties, title to the land, interest taken, and area taken." Then, if the judge determines that a taking has occurred, the parties proceed to the second stage to determine how much compensation is due. N.C. Gen. Stat. § 40A-49 (2013).

This Court has held that N.C. Gen. Stat. § 40A-47 orders, although interlocutory, affect a substantial right warranting an immediate appeal because "[i]t would be an act of futility and injurious to the interests of [a government] to otherwise compel it to proceed through trial on the issue of damages if the trial court's initial determination that a taking had occurred was in error." *Concrete Mach. Co. v. City of Hickory*, 134 N.C. App. 91, 96, 517 S.E.2d 155, 158 (1999). *See also City of Winston-Salem v. Slate*, 185 N.C. App. 33, 37, 647 S.E.2d 643, 646 (2007) (holding N.C. Gen. Stat. § 40A-47 order resolving all issues except issue of just compensation was immediately appealable as affecting substantial right).

Trent Woods equates the denial of its motion to dismiss the inverse condemnation claim to an order pursuant to N.C. Gen. Stat. § 40A-47. However, unlike a N.C. Gen. Stat. § 40A-47 order, denial of a motion to dismiss does not determine any of the merits of the underlying inverse condemnation claim. Furthermore, denying immediate review does not result in forcing the parties to proceed on the issue of compensation even though there may have been no taking. Trent Woods has provided no persuasive reason that the order in this case should be treated like a § 40A-47 order for purposes of an interlocutory appeal. Because Trent Woods has not identified any other substantial

right that may be lost absent immediate appeal, we dismiss that portion of Trent Woods' appeal.

## Discussion

Trent Woods argues that the trial court erred in denying its motion to dismiss plaintiffs' claims for negligence, nuisance, trespass, and permanent injunction because it is entitled to governmental immunity. Plaintiffs counter that Trent Woods is not entitled to governmental immunity because it was engaged in a proprietary function, and, to the extent that Trent Woods' actions may be considered governmental, Trent Woods waived its immunity by purchasing liability insurance.

We review the denial of a motion to dismiss based on the defense of governmental immunity de novo. *White v. Trew*, 366 N.C. 360, 362-63, 736 S.E.2d 166, 168 (2013). Additionally, when reviewing Rule 12(b)(1) motions, we may consider and weigh matters outside the pleadings. *Williams v. Devere Constr. Co.*, 215 N.C. App. 135, 138, 716 S.E.2d 21, 25 (2011).

"Governmental immunity prevents municipal corporations from being sued when they act in a governmental capacity, but does not apply to actions which are proprietary." *Kizer v. City of Raleigh*, 121 N.C. App. 526, 527, 466 S.E.2d 336, 337 (1996). Therefore, "'[a]pplication of the doctrine depends upon whether the activity out of which the tort arises is properly

characterized as governmental or proprietary in nature.'" *Williams*, 215 N.C. App. at 138-39, 716 S.E.2d at 26 (quoting *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 826-27, 562 S.E.2d 75, 77 (2002)).

Trent Woods argues that plaintiffs' claims arise out of the establishment and construction of a sewer system and, therefore, involve governmental actions. Plaintiffs, however, contend that their claims are based on Trent Woods' maintenance of a storm drainage system and, therefore, involve non-governmental -- or proprietary -- actions not entitling Trent Woods to governmental immunity.

As an initial matter, we believe it is worth observing:

> Our courts have long noted that drawing the line between municipal operations which are proprietary and subject to tort liability versus operations which are governmental and immune from such liability is a difficult task. *Millar v. Wilson*, 222 N.C. 340, 23 S.E.2d 42 (1942) (noting that maintenance of public roads and highways is recognized as governmental while imposing liability on a municipality for negligent failure to keep its streets and sidewalks in reasonably safe condition as an "illogical" but uniformly applied exception); *Sides v. [Cabarrus Mem'l Hosp. Inc.]*, 287 N.C. 14, 213 S.E.2d 297 (1975) (First, noting that courts have applied one classification to an activity in general while applying the opposite classification to certain phases of the same activity; Second, noting that courts have applied a proprietary classification to the exact activities that courts have previously determined that

> expenditures for such activities, *e.g.* airports, garbage removal and public parks, are for a public purpose.). The "application of the [governmental-proprietary distinction] to given factual situations has resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972).

*Pulliam v. City of Greensboro*, 103 N.C. App. 748, 751, 407 S.E.2d 567, 568 (1991).

As the parties' arguments demonstrate, courts in North Carolina have treated municipal action involving a city's sewer system differently than municipal action involving a city's storm drainage system. When it comes to drainage systems, this Court has adopted a bright-line rule that "storm drain maintenance does not enjoy governmental immunity." *Kizer*, 121 N.C. App. at 528, 466 S.E.2d at 338. When it comes to sewer systems, on the other hand, the classification of the activity as governmental or proprietary is not as cut and dried.

"Historically, the establishment, construction, and maintenance of a sewer system by a municipality for its residents was a governmental function . . . ." *Williams*, 215 N.C. App. at 139, 716 S.E.2d at 26. However, "[i]n more recent cases before this Court, recognizing the development of municipal sewer services provided by privately owned public

utility companies, we have declined to grant immunity on the sole basis that sewer service was provided by a municipality." *Id.* at 140, 716 S.E.2d at 26. Now, the focus has shifted to the commercial aspect of the activity. "Although a 'profit motive' is not dispositive in determining whether an activity is governmental or proprietary in nature, *see Schmidt* [*v. Breeden*, 134 N.C. App. 248, 253, 517 S.E.2d 171, 175 (1999)], '[c]harging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary.'" *Bostic Packaging*, 149 N.C. App. at 827, 562 S.E.2d at 77 (quoting *Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 235 (1990)).

Here, plaintiffs allege that their property was flooded due to the construction of a sewer pump station on an intense watershed overflow lot in their subdivision and due to the inadequacy of the 18-inch pipe in the main drainage ditch running from lots 4, 5, and 6 of the subdivision to the nearby canal. Trent Woods did not own, operate, or construct the lot 4 sewer pump station. The extent of Trent Woods' actions regarding the sewer system was to reimburse New Bern for the cost of its development and construction -- an action which, in and of itself, did not form the basis of plaintiffs' claims against Trent Woods.

Instead, plaintiffs based their claims on the allegations

that Trent Woods assumed responsibility to improve and maintain the storm drain system on the lots purchased for the sewer system. As part of its drainage plan for the Greenside subdivision, Trent Woods had imposed restrictive covenants on lots 4, 5, and 6 that required the lots to be utilized as an "intense watershed overflow." The construction by New Bern of the sewer pump on lot 4 altered the natural storm drainage patterns in the subdivision, and Trent Woods failed to remediate the drainage problems by replacing the 18-inch culvert under Country Club Road with a 42-inch culvert, despite having assumed the duty to do so when it accepted the transfer of ownership of lots 5 and 6. We conclude that Trent Woods' actions in this case involved its failure to maintain its storm drainage system. Therefore, under *Kizer*, Trent Woods is not entitled to governmental immunity.

Nevertheless, Trent Woods argues that it is entitled to governmental immunity because the culvert under Country Club Road is part of the state highway system, and, therefore, it is the State's responsibility. *See Milner Hotels, Inc. v. City of Raleigh*, 271 N.C. 224, 226, 155 S.E.2d 543, 545 (1967) ("[T]he Highway Commission is under a statutory obligation with reference to the construction, maintenance and repair of all city streets, including culverts which support city streets,

which constitute a part of the State Highway system."). Trent Woods contends that under *Colombo v. Dorrity*, 115 N.C. App. 81, 86, 443 S.E.2d 752, 756 (1994), governmental immunity applies to the negligent maintenance of streets and culverts that are a part of the State Highway system, even when the city has assumed a contractual duty to maintain the culvert.

Trent Woods misconstrues the holding of *Colombo*. The issue in *Colombo* was whether the City of Durham was entitled to immunity for negligently failing to clear vegetation that obscured a stop sign on a street that was a part of the state highway system, but ran within the municipal limits of the City of Durham. *Id.* at 82, 443 S.E.2d at 754.

The plaintiff argued that the case fell within the common law exception to the doctrine of governmental immunity that applies when "a municipality creates a dangerous condition in its streets that proximately causes injury to a person using the street." *Id.* at 85, 443 S.E.2d at 755. This Court determined that the common law exception did not apply because the street in question, although within the municipal limits of the city of Durham, was a part of the state highway system and not the city's street. *Id.* at 86, 443 S.E.2d at 756. Although the City of Durham had contracted with the State to maintain the street, the contract did not change the status of the street as part of

the state highway system. *Id.* Because the common law exception only waived immunity when the municipality creates a dangerous condition on its *own* street, the exception did not apply in that case, and the City was entitled to immunity. *Id.* *Colombo*'s limited holding has no application to this case.

Trent Woods also argues that it is entitled to immunity because the 2010 Agreement with New Bern was void under N.C. Gen. Stat. § 159-28(a) (2013). In support of this contention, Trent Woods cites *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 103, 545 S.E.2d 243, 247-48 (2001), which held that Durham County was entitled to immunity for Data General's breach of contract claim because the contract was invalid under N.C. Gen. Stat. § 159-28(a). The holding in *Data General* was based on the rule that "'whenever the State of North Carolina, through its authorized officers and agencies, enters into a *valid* contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.'" *Data General*, 143 N.C. App. at 102, 545 S.E.2d at 247 (quoting *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976)).

Here, in contrast to the facts of *Data General*, Trent Woods is not being sued for breach of contract, and therefore the validity of the 2010 Agreement has no bearing on whether Trent Woods is entitled to governmental immunity. To the extent the

validity of the 2010 Agreement is relevant to showing that Trent Woods assumed a duty to maintain the culverts, that issue goes to the merits of plaintiffs' claims, which is not properly before us.

In conclusion, we hold that the trial court did not err in denying Trent Woods' motion to dismiss based on the defense of governmental immunity. Because plaintiffs' claims for negligence, nuisance, trespass, and a permanent injunction arose out of Trent Woods' actions in failing to maintain its storm drain system, Trent Woods was acting in a non-governmental capacity and is not entitled to sovereign immunity. Because of this holding, we need not address whether Trent Woods waived immunity by purchasing insurance coverage.

Affirmed in part; dismissed in part.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).